## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

### (Southern Division)

| | |
|---|---|
| REMI CHIU, BILAL ASKARYAR, SHIREE SOUTHERLAND, CARLZEN BALAGOT, KOURTNEY RUSOW, JACQUELINE SLATER, CALEB OBERST, STEPHEN PARZIALE, JENNIE CANNING, AND ELISA SEEHERMAN INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED<br><br>Plaintiffs,<br><br> v.<br><br>TIAA BOARD OF GOVERNORS, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, COLLEGE RETIREMENT EQUITIES FUND, TEACHERS ADVISORS, LLC, TIAA-CREF INVESTMENT MANAGEMENT, LLC, TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC, TIAA TRUST, N.A., AND TIAA WEALTH INVESTMENT MANAGEMENT, LLC<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>Case No.: _____<br><br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Remi Chiu, Bilal Askaryar, Shiree Southerland, Carlzen Balagot, Kourtney Rusow; Jacqueline Slater, Caleb Oberst, Stephen Parziale, Jennie Canning, and Elisa Seeherman, individually and behalf of all other similarly situated proposed Class Members who are residents of the States of Maryland, California, Florida, Pennsylvania, and Massachusetts (the "Five States") (named Plaintiffs and Proposed Class Members, collectively, "Plaintiffs"), bring this

action against Defendants TIAA Board of Governors ("TIAA BOG"), Teachers Insurance and Annuity Association of America ("TIAA Insurance Annuity"), College Retirement Equities Fund ("CREF"), Teachers Advisors, LLC "Teachers Advisors"), TIAA-CREF Investment Management, LLC ("TCIM"), TIAA-CREF Individual & Institutional Services, LLC ("TIAA I&I"), TIAA Trust, N.A. ("TIAA Trust"), and TIAA Wealth Investment Management, LLC ("TIAA WIM") (collectively, "TIAA" or "Defendants"). Based on their personal knowledge, and on information and belief, Plaintiffs allege that that TIAA, as a financial institution, disclosed Plaintiffs' personally identifiable information ("PII"), i.e., information that can be used to distinguish or trace an individual's identity, and "Private Financial Information" i.e., nonpublic personal information about an individual's finances, (PII and Private Financial Information together herein are referred to as "Confidential Information"). Plaintiffs communicated to TIAA pursuant to TIAA's provision of financial products and services to Plaintiffs. Plaintiffs further allege that TIAA disclosed and continues to disclose this Confidential Information to Unauthorized Third Parties without Plaintiffs' prior notice or consent, in violation of the laws of the Five States.

Plaintiffs allege as follows:

## INTRODUCTION

1. TIAA, as an interrelated enterprise with multiple subsidiary entities, is one of the largest financial institutions in America. TIAA provides investment, retirement account management, debt management, and other financial services to more than five million customers nationwide. Established in 1918 with a founding mission to help educators "retire with dignity," it remains a leading financial services provider in the U.S. retirement market. Advertising itself as "a market-leading retirement company fueled by world-class asset management serving

CLASS ACTION COMPLAINT

academics, healthcare, government and more," TIAA claims to manage more than $1.4 trillion of customer funds as of September 30, 2025.[1]

2.      Among other things, TIAA offers "retirement calculators and other financial tools" ("Online Tools") for creating budgets, calculating retirement needs, saving for a child's future education, and other financial planning tasks (these tools, the TIAA mobile application, and the Website are herein collectively referred to as "TIAA Systems"). TIAA touts the benefits of using its online systems, which require consumers to communicate extensive and highly-sensitive personal financial information to TIAA, such as an individual's income, savings, investments and other assets, mortgagers and loans, bank account and pension account balance, insurances and annuities, credit card and other debts, and other information relating to an individual's personal finances. This Confidential Information is communicated directly to TIAA so that it may provide "expert insights, and real-world strategies for building your financial future." As a result, TIAA operates as a "Financial Institution" as defined by state and federal laws and is thus subject to state and federal laws that require Financial Institutions to protect customers' Confidential Information.

3.      Despite its professed mission to serve and protect its customers, TIAA has brazenly violated the privacy rights of its customers—citizens of at least five states—who have entrusted TIAA with guiding them through retirement. TIAA breached that trust by disclosing Plaintiffs' Confidential Information to unauthorized third-party companies (the group of unauthorized recipients of Plaintiffs' data, including at least Google and LinkedIn, are herein referred to as "Unauthorized Third Parties"). Through these surreptitious and nonconsensual disclosures to Unauthorized Third Parties, TIAA not only betrayed the very customers it claims

---

[1] TIAA.ORG, https://www.tiaa.org/public.

to safeguard, but also violated state laws that strictly prohibit such disclosures.

4.     TIAA made these disclosures by granting unassociated and Unauthorized Third Parties access to TIAA Systems and, thereby, Plaintiffs' Confidential Information. To obtain the services TIAA provides, members (including Plaintiffs) must communicate their Confidential Information directly to TIAA using the TIAA Systems, which are marketed and advertised as "secure." Unbeknownst to its users, TIAA discloses this information by giving Unauthorized Third Parties access to the System and permitting Unauthorized Third Parties to embed tracking technology into TIAA Systems. Utilizing these software "tracker" programs incorporated into the TIAA Systems, these Unauthorized Third Parties intercept, capture, and communicate the Plaintiffs' Confidential Information connected with their identities directly to their own Unauthorized Third-Party databases for later unrestrained, uncontrolled, and unrestricted use.

5.     Plaintiffs' sensitive Confidential Information—the privacy of which is of substantial value to Plaintiffs—is communicated to TIAA by users with the expectation that it will be held in confidence and not be shared with anyone, let alone Unauthorized Third Parties. This expectation is based, in part, on TIAA's own explicit statement to customers, that it "will not disclose your personal information to anyone outside of the TIAA Companies unless: 1) we have received proper consent from you; 2) we are legally permitted to do so; or 3) we reasonably believe, in good faith, that we are legally required to do so."[2] TIAA, however, has fallen woefully short of this promise, violating its own stated policies and the Five State laws in the process.

_____

[2] *TIAA Privacy Notice* (published Jan. 2024), TIAA.ORG (captured on the Internet Archive on Dec. 12, 2024), https://web.archive.org/web/20241212181742/https%3A%2F%2Fwww.tiaa.org%2Fpublic%2Fsupport%2Fprivacy%2Fprivacy-notice.

CLASS ACTION COMPLAINT

6.      These unauthorized disclosures of Plaintiffs' Confidential Information are made all the more egregious because (1) TIAA's disclosures have been, and continue to be, made intentionally and in violation of state laws that prohibit them without all parties' consent; (2) TIAA made the disclosures in blatant disregard of state laws applicable to TIAA as a Financial Institution offering financial services across these Five States and nationally; (3) TIAA's disclosures are made to marketing entities, including massive ones such as Google and LinkedIn ("Unauthorized Thid Parties"), that collect and maintain substantial amounts of individuals' personal information for their own profit-making purposes,[3] including selling this personal information to many other entities for marketing and targeted advertising purposes; and (4) TIAA expressly warrants and represents that it does not do so, thus encouraging users to provide Confidential Information without concern for its protection and their personal privacy and security. TIAA must be held accountable.

## **PARTIES**

7.      Plaintiff **Remi Chiu** is a Maryland resident living in the city of Baltimore. He is employed as Professor of Musicology and Historical Performance and Chair of the Musicology Department at The Peabody Institute of Johns Hopkins University in Baltimore, Maryland. Plaintiff Chiu has maintained a TIAA retirement account continuously since approximately July 2013. Plaintiff Chiu has used and continues to use TIAA Systems to access his retirement accounts and Online Tools using computing devices at his residence and/or place of employment in Maryland. He has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Chiu communicates his Confidential Information to TIAA with

---

[3] *See generally*, *United States v. Google LLC*, 747 F. Supp. 3d 1 (D.D.C. 2024) (examining the data Google collects from users in an antitrust analysis).

the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to him and his express prior consent.

8. Plaintiff **Bilal Askaryar** is a Maryland resident living in the city of Baltimore. He is employed as director of communications for the non-profit Acacia Center for Justice. Plaintiff Askaryar has maintained a TIAA retirement account continuously since approximately January 2018. Plaintiff Askaryar has used and continues to use TIAA Systems to access his retirement accounts and Online Tools using computing devices at his residence and/or place of employment in Maryland. He has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Askaryar communicates his Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to him and his express prior consent.

9. Plaintiff **Shiree Southerland** is a Maryland resident living in Pikesville, in Baltimore County. She is employed as Associate Adjunct Professor in both the School of Nursing and the Global Campus at the University of Maryland. Plaintiff Southerland has maintained a TIAA retirement account continuously since approximately October 2013. Plaintiff Southerland has used and continues to use TIAA Systems to access her retirement accounts and Online Tools using computing devices at her residence and/or place of employment in Maryland. She has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Southerland communicates her Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to her

CLASS ACTION COMPLAINT

and her express prior consent.

10.    Plaintiff **Carlzen Balagot** is a California resident living in San Dimas, in Los Angeles County. Before his retirement, Plaintiff Balagot was employed as a Research Assistant in Developmental Biology at the California Institute of Technology. Plaintiff Balagot has maintained a TIAA retirement account continuously since approximately April of 1993. Plaintiff Balagot has used and continues to use TIAA Systems to access his retirement accounts and Online Tools using computing devices at his residence and/or place of employment in California. He has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Balagot communicates his Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to him and his express prior consent.

11.    Plaintiff **Kourtney Rusow** is a California resident living in the city of San Francisco. Until February of 2025, she was employed as a humanitarian advisor for the United States Agency for International Development ("USAID"). Plaintiff Rusow has maintained a TIAA retirement account continuously since approximately August 2019. Plaintiff Rusow has used and continues to use TIAA Systems to access her retirement accounts and Online Tools using computing devices at her residence and/or place of employment in California. She has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Rusow communicates her Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to her and her express prior consent.

CLASS ACTION COMPLAINT

12.     Plaintiff **Jacqueline Slater** is a Florida resident living in Jacksonville, in Duval County. She is employed as Assistant Professor for General Studies at Edward Waters University. Plaintiff Slater has maintained a TIAA retirement account continuously since approximately February 1992. Plaintiff Slater has used and continues to use TIAA Systems to access her retirement accounts and Online Tools using computing devices at her residence and/or place of employment in Florida. She has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Slater communicates her Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to her and her express prior consent.

13.     Plaintiff **Caleb Oberst** is a Massachusetts resident living in Mashpee, in Barnstable County. He is employed remotely as associate director of Leadership Project Management at The New School in New York. Plaintiff Oberst has had a TIAA retirement account continuously since approximately May of 2014. Plaintiff Oberst has used and continues to use TIAA Systems to access his retirement accounts and Online Tools using computing devices at his residence in Massachusetts. He has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Oberst communicates his Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to him and his express prior consent.

14.     Plaintiff **Stephen Parziale** is a Massachusetts resident living in Marion, in Plymouth County. He is employed as a Biostatistician at Yale University in Connecticut. Plaintiff Parziale has had a TIAA retirement account continuously since approximately March of

CLASS ACTION COMPLAINT

2021. Plaintiff Parziale has used and continues to use TIAA Systems to access his retirement accounts and Online Tools using computing devices at his residence in Massachusetts. He has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Parziale communicates his Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to him and his express prior consent.

15. Plaintiff **Jennie Canning** is a Pennsylvania resident living in Pittsburgh, in Allegheny County. She is employed as an art teacher for the Pittsburgh Public Schools. Plaintiff Canning has had a TIAA retirement account continuously since approximately September of 2005. Plaintiff Canning has used and continues to use TIAA Systems to access her retirement accounts and Online Tools using computing devices at her residence and/or place of employment in Pennsylvania. She has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Canning communicates her Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to her and her express prior consent.

16. Plaintiff **Elisa Seeherman** is a Pennsylvania resident living in Wyndmoor, in Montgomery County. She is employed as the associate director of career services at the Penn State Great Valley School of Graduate Professional Studies of the Pennsylvania State University. Plaintiff Seeherman has had a TIAA retirement account continuously since approximately May of 1994. Plaintiff Seeherman has used and continues to use TIAA Systems to access her retirement accounts and Online Tools using computing devices at her residence and/or place of

employment in Pennsylvania. She has communicated Confidential Information to TIAA on multiple occasions through these means. Plaintiff Seeherman communicates her Confidential Information to TIAA with the expectation and belief that such communications and the information and content provided are treated as confidential and are not disclosed to Unauthorized Third Parties without notice to her and her express prior consent.

17. Defendant TIAA Board of Governors ("TIAA BOG") is non-profit corporation chartered in New York and with its principal place of business in New York. It is a financial institution under federal and state laws and is comprised of a group of financial services companies including multiple wholly-owned subsidiaries who are also defendants named herein ("together referred to as "TIAA"). TIAA was first established under the laws of the State of New York in 1918. It has physical office locations with employees offering and performing financial services to Plaintiffs and other customers throughout the Five States. These locations include three offices in Maryland (Baltimore, Columbia, and Bethesda); eight offices in California (Irvine, Palo Alto, Pasadena, San Diego, Sherman Oaks, Walnut Creek, and two in San Francisco); fifteen offices in Florida (Boca Raton, Coral Gables, Daytona Beach, Fort Myers, Gainesville, Melbourne, Naples, Orlando, Palm Beach Gardens, Sarasota, Summerfield, Tallahassee, Tampa, and two in Jacksonville); eight offices in Massachusetts (Andover, Cambridge, Hadley, Hingham, Hyannis, Waltham, and two in Boston); and eight offices in Pennsylvania (Center Valley, Mechanicsburg, Newtown, Philadelphia, Pittsburgh, Radnor, State College, and Wilkes Barre).

18. Defendant Teachers Insurance and Annuity Association of America ("TIAA Insurance Annuity"), an insurance company that issues life insurance policies, annuity contracts, and guaranteed funding agreements. It is incorporated and has its principal place of business in

the state of New York. On information and belief, it is a wholly owned subsidiary of TIAA Board of Governors and provides these financial services to customers from TIAA's offices in the Five States.

19.     Defendant College Retirement Equities Fund ("CREF"), an investment company that provides retirement annuities. It is incorporated and has its principal place of business in the state of New York. On information and belief, it is a wholly owned subsidiary of TIAA BOG and provides these financial services to customers from TIAA's offices in the Five States.

20.     Defendant Teachers Advisors, LLC ("Teachers Advisors"), an investment advisor that provides services for TIAA mutual funds and personal annuities. It is incorporated in the state of Delaware and has its principal place of business in the state of New York. On information and belief, it is a wholly owned subsidiary of TIAA BOG and provides these financial services to customers from TIAA's offices in the Five States.

21.     Defendant TIAA-CREF Investment Management, LLC ("TCIM"), the investment advisor to CREF. It is incorporated in the state of Delaware and has its principal place of business in the state of New York. On information and belief, it is a wholly owned subsidiary of TIAA and provides these financial services to customers from TIAA's offices in the Five States.

22.     Defendant TIAA-CREF Individual & Institutional Services, LLC ("TIAA I&I"), which distributes securities products and is a registered investment advisor It is incorporated in the state of Delaware and has its principal place of business in the state of Delaware. On information and belief, it is a wholly owned subsidiary of TIAA BOG and provides these financial services to customers from TIAA's offices in the Five States.

23.     Defendant TIAA Trust, N.A. ("TIAA Trust"), a federally chartered, trust-only national bank that provides investment management, fiduciary, and custody services for

individuals and institutions. It is incorporated in the state of North Carolina and has its principal place of business in the state of North Carolina. On information and belief, it is a wholly owned subsidiary of TIAA and provides these financial services to customers from TIAA's offices in the Five States.

24.     Defendant TIAA Wealth Investment Management, LLC ("TIAA WIM"), a registered investment advisor. It is incorporated in the state of Delaware and has its principal place of business in the state of New York. On information and belief, it is a wholly owned subsidiary of TIAA Board of Governors and provides these financial services to customers from TIAA's offices in the Five States.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 (diversity jurisdiction) which authorizes federal district courts to hear civil cases between citizens of different states when the amount in controversy exceeds $75,000.00. The Defendants are incorporated and have their principal places of business in New York, North Carolina, and Delaware. Plaintiffs and Class members are all residents of states other than New York, North Carolina, and Delaware as they reside in the states of Maryland, California, Pennsylvania, Florida and Massachusetts. The amount in controversy in this class action, based upon the minimum statutory damages under the applicable laws of the Five States of at least $1,000 per occurrence is substantially in excess of $75,000.00.

26.     The Court also has original jurisdiction to hear this case under the Class Action Fairness Act of 2005, codified as 28 U.S.C. § 1332(d) because (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of

CLASS ACTION COMPLAINT

plaintiffs and one defendant are citizens of different States. 28 U.S.C. § 1332(d)(2). The number of class members is more than 100 and is estimated to be in excess of 30,000. Plaintiffs allege substantially beyond the minimum five million dollars in damages as they allege statutory damages of at least $1000 per occurrence. There is minimal diversity between Plaintiffs, all citizens of California, Florida, Maryland, Massachusetts, and Pennsylvania, and Defendants, citizens of New York, Delaware, and North Carolina.

27.     This Court has personal jurisdiction over all Defendants because they conducted and continue to conduct substantial business in the District, and because they have committed acts and omissions complained of herein in the District. This case arises in substantial part from the Defendants' conduct in the State of Maryland and the foreseeable effects of that conduct within this jurisdiction. Each of the Defendants carries on a regular business in Maryland, including in Bethesda, Maryland at 915 Meeting Street, Suite 1220, Bethesda Maryland 20852.

28.     Venue is proper under 28 U.S.C. § 1391 at least because each of the Defendants is subject to the Court's personal jurisdiction with respect to this civil action and because the events and omissions giving rise to this Action occurred in this District and Defendants have caused harm to Plaintiffs who reside in and were harmed in this District.

**FACTUAL ALLEGATIONS**

29.     This action is a class-action suit seeking damages and injunctive relief under the laws of the Five States of Maryland, California, Florida, Massachusetts, and Pennsylvania, for the Defendants' violations of state laws by disclosing Confidential Information to Unauthorized Third Parties including, at least, Google, LLC ("Google") and the LinkedIn Corporation ("LinkedIn") and/or affiliates thereof.

30.     TIAA is a Fortune 100 company with more than $1.4 trillion in assets under its

CLASS ACTION COMPLAINT

management.[4] It was established in 1918 with "a founding mission to help educators retire with dignity."[5] Today, TIAA is a leading financial services provider in the U.S. pension, retirement planning and retirement market. It is America's largest 403(b) provider when measured by total plan assets, by total ERISA plan count, and by total higher education industry plan count.[6] TIAA primarily serves employees in higher education, research, government, healthcare, and non-profit sectors. Current and former employees of over 12,000 institutional plan sponsors, such as colleges, universities and high schools, use TIAA to manage their retirement plans.[7] TIAA has nearly five million individual customers of its retirement, wealth management, and other financial services in the United States.[8] Repeated in advertising campaigns and stated as a company promise on its websites, TIAA purports "to serve those who serve others."[9] TIAA's website homepage also tells users, in bold lettering, to "count on [them] for a more secure

---

[4] TIAA.ORG, https://www.tiaa.org/public [https://web.archive.org/web/20250903002841/https://www.tiaa.org/public] (captured on the Internet Archive on September 3, 2025, 00:28:41 GMT).

[5] *About TIAA*, TIAA.ORG, https://www.tiaa.org/public/about-tiaa/our-story [https://perma.cc/7Q33-PCJL] (accessed Jan. 20, 2026).

[6] *2025 PLANSPONSOR 403(b) Market Survey*, PLANSPONSOR (June 24, 2025), https://www.plansponsor.com/surveys/2025-403b-market-survey/ [https://perma.cc/U9FS-UMHY].

[7] *Retirement Plan Services: Help Employees Build More Secure Futures*, TIAA.ORG: PLAN SPONSORS, https://www.tiaa.org/public/plansponsors/retirement-plan-management [https://perma.cc/WZ7E-36E6] (accessed Feb. 2, 2026).

[8] TIAA.ORG, https://www.tiaa.org/public [https://web.archive.org/web/20250903002841/https://www.tiaa.org/public] (captured on the Internet Archive on September 3, 2025, 00:28:41 GMT).

[9] *Why TIAA: TIAA Advantage*, TIAA.ORG: PLAN SPONSORS, https://www.tiaa.org/public/plansponsors/who-we-serve [https://perma.cc/8KFH-CFD6] (accessed Feb. 2, 2026).

CLASS ACTION COMPLAINT

retirement."[10]

31.    Plaintiffs are educators, academic researchers, teachers, healthcare workers, non-profit organizers, government workers, and others who entrust their Private Financial Information to TIAA. TIAA states on its website that its comprehensive approach to retirement planning, wealth and asset management services is "centered around one goal: to build lasting prosperity for [its] clients."[11] Plaintiffs rely on TIAA to assist them in financial planning and, in doing so, communicate to TIAA their most sensitive and Confidential Information. Just as they trust TIAA (a fiduciary) to protect their investments, Plaintiffs rely upon and trust that such information is being held in confidence when Plaintiffs use the TIAA Systems for communicating Confidential Information to TIAA.

32.    As part of its offering of financial services to its customers, TIAA operates proprietary Systems including a website (www.tiaa.org, Figure 1, below) (the "Website"), mobile applications, and a variety of online financial tools and calculators which are used for communications between customers of TIAA and TIAA. A screenshot of the Website is shown in Figure 1. Some Online Tools are available both to customer users who log into their accounts or those who use the Website without logging in. These include, for example, tools for retirement planning, saving and investing, addressing debt, IRAs, tax obligations, and general budgeting.

33.    Common to these Online Tools is the ability of the customer to communicate highly sensitive and confidential personal financial information directly to TIAA through TIAA's purported "secure" network for the purposes of the customer obtaining personalized

---

[10] TIAA.ORG, https://www.tiaa.org/public [https://web.archive.org/web/20250903002841/https://www.tiaa.org/public] (captured on the Internet Archive on September 3, 2025, 00:28:41 GMT).

[11] *About TIAA*, TIAA.ORG, https://www.tiaa.org/public/about-tiaa/our-story [https://perma.cc/7Q33-PCJL] (accessed Jan. 20, 2026).

CLASS ACTION COMPLAINT

financial services in response.



Figure 1: The Website, http://tiaa.org/public
[https://web.archive.org/web/20250903002841/https://www.tiaa.org/public] (captured on the
Internet Archive on September 3, 2025, 00:28:41 GMT).

34.    TIAA's Online Tools are accessed from the Website,. Users select the retirement

dropdown menu on the Website homepage, shown annotated in red in Figure 2 below, to access

the "Retirement Calculators & Financial Tools."



Figure 2: http://tiaa.org/public
[https://web.archive.org/web/20250903002841/https://www.tiaa.org/public] (captured on the Internet Archive on September 3, 2025, 00:28:41 GMT).

35.    The Website contains a menu of retirement calculators and tools, as seen below in Figure 3. On information and belief, some design features of the Website were altered by TIAA during the period between November 18, 2025 and November 27, 2025. However, the functionality of the Website and its Online Tools remain consistent, and the disclosure of users' information to Unauthorized Third Parties continues to occur.



Figure 3: "Retirement Calculators and Financial Tools" page of the Website, https://www.tiaa.org/public/tools-calculators [https://web.archive.org/web/20250906015044mp_/https://www.tiaa.org/public/tools-calculators] (captured on the Internet Archive on September 6, 2025, 01:50:44 GMT).

36.    Figures 4 and 5 below show an example of the use of the Debt Illustrator tool, including how a user inputs his information on the amount and type of debt owed. On

CLASS ACTION COMPLAINT

information and belief, sometime between November 18, 2025 and November 27, 2025, TIAA

removed the Debt Illustrator from its menu of Online Tools. However, the Debt Illustrator is now

accessed using the URL https://my.tiaa.org/private/robo/engage/v2/debtTool

[https://perma.cc/24LZ-JK6Q].



Figure 4: The Debt Illustrator tool, https://my.tiaa.org/private/robo/engage/v2/debtTool (accessed on or about November 12, 2025).

CLASS ACTION COMPLAINT



Figure 5: User asked to input their Confidential Information into the "Debt Illustrator" tool, https://my.tiaa.org/private/robo/engage/v2/debtContent (accessed on or about November 12, 2025).

37.    Figures 6-8 below show an example of the use of the Am I On Track tool, including how a user enters Confidential Information including retirement savings and salary amounts.



Figure 6: The "Am I On Track" tool, https://www.tiaa.org/public/tools-calculators/getontrack/calculator/start (accessed December 15, 2025).



Figure 7: User asked to input their Confidential Information into the "Am I On Track" tool, https://www.tiaa.org/public/tools-calculators/getontrack/calculator/savings (accessed December 16, 2025).



Figure 8: User receives recommendations based on their personal data in "Am I On Track" tool, https://www.tiaa.org/public/tools-calculators/getontrack/playbook (accessed on or about December 16, 2025).

38. TIAA expressly represents to Plaintiffs and other customers that it will maintain and protect the Confidential Information communicated to TIAA from disclosure to Unauthorized Third Parties.

39. Plaintiffs relied upon these duties, promises, obligations, and protections when seeking financial services, which involve the communication of their Confidential Information to TIAA.

CLASS ACTION COMPLAINT

40.    TIAA solicits the use of the TIAA Systems Online Tools through e-mails to users and through marketing on its Website. The home page of the Website makes the Online Tools readily available and easy to access and use, as seen in Figure 9. The Website is designed for interactive communication between TIAA and users, such as Plaintiffs, offering multiple Online Tools and calculators for retirement planning, saving and investing, IRAs, tax obligations, and general budgeting. Some of TIAA's Online Tools are available without logging in to a customer account; others require customers to log in.



Figure 9: The top of the Website's homepage, promoting the use of TIAA's Online Tools to any public viewers (circled in red), [https://perma.cc/87YF-QDSZ] (accessed on or about November 17, 2025).

41.    Without Plaintiffs' knowledge or consent, TIAA, by separate arrangements with Unauthorized Third Parties, permits Unauthorized Third Parties to intercept Plaintiffs' Confidential Information—information being communicated directly to TIAA—and route that captured information directly to these Unauthorized Third Parties. This interception is accomplished by the installation of third-party analytics software ("Analytics Trackers") in the

TIAA Systems. These automated Analytics Trackers surreptitiously intercept the Confidential Information by locating, acquiring, capturing and then transmitting it to Unauthorized Third Parties. Once obtained through this interception and routing process, on information and belief, it is maintained, stored and used by the Third Parties for their own revenue-generating purposes, including marketing and targeted advertising.

42.     These disclosures are made to Unauthorized Third Parties without restrictions on their subsequent use of the Confidential Information.

43.     By disclosing Plaintiffs' Confidential Information to Unauthorized Third Parties without Plaintiffs' prior consent, TIAA has violated, and continues to violate, the laws of Maryland, California, Florida, Massachusetts, and Pennsylvania, specifically:

a.      Maryland's Wiretapping and Electronic Surveillance Act, Md. Code, Cts. & Jud. Proc. §§ 10-401 *et seq*.

b.      California's Invasion of Privacy Act, Cal. Penal Code §§ 631(a), 637.2 *et seq*.

c.      Florida's Security of Communications Act, Fla. Stat. §§ 934.03, 934.10 *et seq*.

d.      Massachusetts General Laws Chapter 272, § 99 *et seq.*, Interception of Wire Communications.

e.      Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5703, 5725 *et seq*.

44.     Each of TIAA's disclosures of Confidential Information to each Unauthorized Third Party constitutes a separate and distinct violation of law.

45.     TIAA intentionally disclosed, and continues to disclose, Plaintiffs' Confidential Information by allowing the routine and continuous interception of Confidential Information by at least two Unauthorized Third Parties, Google and LinkedIn, without the Plaintiffs' prior

CLASS ACTION COMPLAINT

consent as required by state law.

## A. **Analytics Trackers**

46. TIAA provides Unauthorized Third Parties access to its Systems and permits Plaintiffs' Confidential Information to be intercepted during communications between TIAA and Plaintiffs. This was done by allowing Unauthorized Third Parties to embed Analytics Trackers in the HTML code for the TIAA Systems.

47. These Analytics Trackers are generally JavaScript code. When customers enter Confidential Information into a TIAA Online Tool, downloaded to his or her personal device for the purpose of communicating that information to TIAA, the Analytics Trackers intercept that communication and send the intercepted information to the respective Unauthorized Third-Party owner of the Analytics Tracker.

### 1. **Google**

48. One of the Analytics Trackers that TIAA permitted to be installed on the TIAA Systems is from Google Analytics.

49. TIAA discloses Plaintiffs' Confidential Information by providing Google access to its proprietary Systems and permitting the installation of multiple Google Analytics Trackers by which Google intercepts Plaintiffs communications and information and content and routes the captured information directly to Google for its uncontrolled use.

50. Google Analytics is a web analytics service that provides website owners with the ability to track visitor actions on their website and/or applications and target them with personalized advertisements.

51. The Google Analytics tracker can be installed onto both open and proprietary websites, applications and systems to identify and capture user or visitor information from those locations including the number of page visits, button clicks, and, importantly, textual information

entered into such systems. According to Google, "Google Analytics is a platform that collects data from websites and apps to create reports that provide insights [for businesses]."[12]

52.     TIAA ignored warnings provided by Google to whom it disclosed Plaintiffs' Confidential Information concerning the use of Google's "trackers" to intercept and acquire sensitive private information.

53.     For example, Google's policy documentation provided to TIAA warns customers like TIAA that they "need to inform users" like Plaintiffs "about the information being stored" by Google "and give them the opportunity to grant or deny their consent" to such information being disclosed to Google.[13]

54.     On information and belief, Google provided these terms of service, agreements and notices to TIAA, or otherwise made TIAA aware of them, at and during the time that TIAA disclosed Plaintiffs' Confidential Information to Google.

55.     Under the laws of each of the Five States, Plaintiffs are entitled to privacy in their protected personal and financial information, including their Confidential Information and confidential communications. TIAA violated these privacy rights and state law by using its systems to disclose Plaintiffs' Confidential Information to the Unauthorized Third Parties.

**2.     LinkedIn**

56.     TIAA disclosed Plaintiffs' Confidential Information by providing LinkedIn access to its proprietary Systems and the installation of the LinkedIn Insight Tag, an Analytics tracker

---

[12] *Introduction to Analytics: How Google Analytics Works*, GOOGLE ANALYTICS HELP CENTER, https://support.google.com/analytics/answer/12159447?hl =en&ref_topic=14089939&sjid=2827624563183915220-NC [https://perma.cc/84PU-MJQL] (accessed Feb. 3, 2026).

[13] *Policies and Data Privacy: Safeguarding Your Data*, GOOGLE ANALYTICS HELP CENTER, https://support.google.com/analytics/answer/6004245?hl=en [https://perma.cc/4JR6-XQ7J].

by which LinkedIn intercepts Plaintiffs communications and information and routes the captured information directly to LinkedIn for its own unrestricted use via the LinkedIn Insight Tag.

57.    LinkedIn is the world's largest professional online networking platform. Like Google, LinkedIn also engages in digital marketing and advertising, generating billions in annual advertising revenue. LinkedIn generates this revenue by selling advertising space on LinkedIn and other platforms, promoting its ability to target specific users using the data collected via LinkedIn Insight Tag.

58.    LinkedIn Insight Tag is JavaScript Code that collects data about Website visitors to measure advertising effectiveness, target particular audiences. LinkedIn uses the data obtained from the LinkedIn Insight Tags, including the Confidential Information intercepted from TIAA, to track and report website traffic and user behavior on the systems of other third-party companies that purchase its advertising to market its products to interested consumers.

59.    TIAA ignored warnings provided by LinkedIn to whom it disclosed Plaintiffs' Confidential Information concerning the use of LinkedIn's "Insight Tag" tracker to intercept and acquire sensitive private information.

60.    Because it tracks and collects data from the systems like that of TIAA and uses and discloses the information to other third-parties, LinkedIn expressly warns companies like TIAA that the Insight Tag should not be used on systems that communicate sensitive information. LinkedIn expressly warns against transfer[ring] to LinkedIn any data that you know or reasonably should know [. . .] constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or

CLASS ACTION COMPLAINT

identifiable individuals."[14]

61.     LinkedIn also warns that the Insight Tag should not be used "if your site includes pages that collect or otherwise handle health, financial, or other sensitive data of individual users. ***Never add the JavaScript code to any such pages***."[15] This can be seen in Figure 10.

Figure 10: Section of LinkedIn Advertise website on LinkedIn Insight Tag installation, https://business.linkedin.com/marketing-solutions/insight-tag [https://perma.cc/G87D-DR4C] (accessed Feb. 3, 2026).

62.     On information and belief, LinkedIn provided these terms of service, agreements and notices to TIAA, or otherwise made TIAA aware of them, at and during the time that TIAA disclosed Plaintiffs' Confidential Information to LinkedIn.

63.     When a Plaintiff logs into LinkedIn, LinkedIn saves identifying information in a cookie on the Plaintiff's computer corresponding to the Plaintiff's LinkedIn account. When that Plaintiff later visits a website that includes a LinkedIn Insight Tag, the Insight Tag sends to LinkedIn the identifying information from the cookie along with other Plaintiff-related information from the website. This allows LinkedIn to link the Confidential Information

---

[14] *LinkedIn Insight Tag FAQs: Important to know*, LINKEDIN HELP, https://www.linkedin.com/help/linkedin/answer/a427660 [https://perma.cc/48DF-UHZD] (accessed Feb. 3, 2026) (emphasis added).

[15] *LinkedIn Insight Tag: Manually Install Tag*, LINKEDIN ADS, https://business.linkedin.com/marketing-solutions/insight-tag [https://perma.cc/G87D-DR4C] (accessed Feb. 3, 2026) (emphasis added).

collected to the Plaintiff's identity.

64.     The LinkedIn Insight Tag can track Plaintiffs even when third-party cookies are blocked.[16]

**B.      TIAA Disclosed Plaintiffs' Information Without their Knowledge or Consent, in Violation of State Laws**

65.     Plaintiff Remi Chiu's experience with TIAA's disclosure of his Confidential information is substantially the same as for all Plaintiffs. Plaintiff Chiu resides in Baltimore, Maryland and has been a TIAA customer since 2013. Plaintiff Remi Chiu's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without his knowledge or consent. Plaintiff Chiu uses the same browser to access his TIAA, LinkedIn, and Google accounts. As recently as 2025, Plaintiff Chiu entered Confidential Information into the "Am I On Track" tool on the Website. Plaintiff Chiu generally logged into his TIAA retirement account when he entered his Confidential Information into the TIAA Systems. Unknown to Plaintiff Chiu, the Google Analytics trackers and the LinkedIn Insight Tags separately intercepted his Confidential Information and routed it to Google and LinkedIn, respectively. Plaintiff Chiu has contributed to his TIAA retirement accounts two times per month since July 2013, and he has used TIAA's System approximately two or three times per year for over twelve years. As an academic researcher and educator, TIAA was his only option for retirement planning. Plaintiff Chiu relied upon TIAA, as his financial institution and as a fiduciary, to treat his Confidential Information as private and confidential. Plaintiff Chiu never expected TIAA to share his Confidential Information with Unauthorized Third Parties without explicitly asking for and affirmatively receiving his consent. Plaintiff Chiu, like all the other Plaintiffs, did not have prior

---

[16] *LinkedIn Insight Tag*, LINKEDIN ADS, https://business.linkedin.com/marketing-solutions/insight-tag [https://perma.cc/G87D-DR4C] (accessed Feb. 3, 2026).

knowledge of, and did not give consent for, the disclosure of his Confidential Information to Unauthorized Third Parties.

66.    Plaintiffs employed a technical data team who examined each Plaintiff's devices, including Plaintiff Chiu's laptop computer. This inspection took place on April 29, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communications with TIAA. That examination and analysis determined that on or about April 29, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Chiu, was intercepted and directed to Google and LinkedIn. The screenshots below in Figures 11 and 12 show his data being transmitted to LinkedIn (Figure 11) and Google (Figure 12).



miss":"modal","data-analytics-formfielddata":"DebtIllustrator_Initial Entry|Type:Credit cards|Name:Credit Card|Owed:$5000|Interest: 5%|Monthly:$500"}}],"isFilteredByClient":false}

Figure 11: Browser communications showing user data for Plaintiff Chiu being sent to LinkedIn while using the "Debt Illustrator" tool (captured in or about April of 2025).



Figure 12: Browser communications showing user data for Plaintiff Chiu being sent to Google while using the "Am I On Track" tool (captured in April of 2025).

67.    Plaintiff Bilal Askaryar resides in Maryland and has been a TIAA customer since

2018. Plaintiff Bilal Askaryar's Confidential Information was disclosed by TIAA to at least

31

CLASS ACTION COMPLAINT

Google and LinkedIn as recently as 2025 without his knowledge or prior consent in the same fashion as Plaintiff Chiu's. Plaintiff Askaryar uses the same browser to access his TIAA, LinkedIn, and Google accounts, and generally logged into his TIAA retirement accounts when he entered his Confidential information. As recently as 2025, Plaintiff Askaryar entered his Confidential Information into the TIAA "Am I On Track" tool and additional Confidential Information into TIAA's "Debt Illustrator" tool. Plaintiff Askaryar was generally logged into his TIAA retirement accounts when he entered his Confidential Information into the TIAA System. Unbeknownst to Plaintiff Askaryar, the Google Analytics trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed his Confidential Information to Google and LinkedIn.

68.    Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Askaryar's computer, which inspection took place July 2, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about July 2, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Askaryar, was intercepted and directed to Google and LinkedIn.

69.    Plaintiff Shiree Southerland resides in Maryland and has been a TIAA customer since 2013. In the same manner as the other Plaintiffs. Plaintiff Southerland's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without her knowledge or prior consent. As recently as 2025 Plaintiff Southerland entered her Confidential Information into TIAA Systems using the same browser to access her TIAA, LinkedIn, and Google accounts. Plaintiff Southerland was generally logged into her TIAA retirement accounts when she entered her Confidential Information. Unbeknownst to Plaintiff Southerland, the Google Analytics

trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed her Confidential Information to Google and LinkedIn, respectively.

70.    Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Southerland's computer, which inspection took place on May 2, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about May 2, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Southerland, was intercepted and directed to Google and LinkedIn.

71.    Plaintiff Carlzen Balagot resides in California and has been a TIAA customer since 1993. In the same manner as the other Plaintiffs, Plaintiff Balagot's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without his knowledge or prior consent. As recently as 2025 Plaintiff Balagot entered his Confidential Information into TIAA Systems using the same browser to access his TIAA, LinkedIn, and Google accounts. Plaintiff Balagot was generally logged into his TIAA retirement accounts when he entered his Confidential Information. Unbeknownst to Plaintiff Balagot, the Google Analytics trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed his Confidential Information to Google and LinkedIn, respectively.

72.    Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Balagot's computer, which inspection took place April 29, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about April 29, 2025, Confidential Information, communicated to and intended only for TIAA by Plaintiff Balagot, was intercepted and directed to Google and LinkedIn.

CLASS ACTION COMPLAINT

73.     Plaintiff Kourtney Rusow resides in California and has been a TIAA customer since 2019. In the same manner as the other Plaintiffs, Plaintiff Rusow's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without her knowledge or prior consent. As recently as 2025 Plaintiff Rusow entered her Confidential Information into TIAA Systems using the same browser to access her TIAA, LinkedIn, and Google accounts. Plaintiff Rusow was generally logged into her TIAA retirement accounts when she entered her Confidential Information. Unbeknownst to Plaintiff Rusow, the Google Analytics trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed her Confidential Information to Google and LinkedIn, respectively.

74.      Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Rusow's computer, which inspection took place May 1, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about May 1, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Rusow, was intercepted and directed to Google and LinkedIn.

75.     Plaintiff Jacqueline Slater resides in Florida and has been a TIAA customer since about 1992. In the same manner as the other Plaintiffs, Plaintiff Slater's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without her knowledge or prior consent. As recently as 2025 Plaintiff Slater entered her Confidential Information into TIAA Systems using the same browser to access her TIAA, LinkedIn, and Google accounts. Plaintiff Slater was generally logged into her TIAA retirement accounts when she entered her Confidential Information. Unbeknownst to Plaintiff Slater, the Google Analytics trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed her Confidential Information to Google

CLASS ACTION COMPLAINT

and LinkedIn, respectively.

76. Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Slater's computer, which inspection took place during on August 6, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about August 6, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Slater, was intercepted and directed to Google and LinkedIn.

77. Plaintiff Caleb Oberst resides in Massachusetts and has been a customer of TIAA since 2014. Upon information and belief, Plaintiff Caleb Oberst's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without his knowledge or prior consent. As recently as December of 2024, Plaintiff Oberst entered his Confidential Information into the "Am I On Track" tool on the Website. Plaintiff Oberst was generally logged into his TIAA retirement accounts when he entered his Confidential Information into the "Am I On Track" tool. Unbeknownst to Plaintiff Oberst, the Google Analytics tags and the LinkedIn Insight Tags that TIAA installed on its website disclosed his Confidential Information to Google and LinkedIn.

78. Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Oberst's computer, which inspection took place on July 15, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about July 15, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Oberst, was intercepted and directed to Google and LinkedIn.

79. Plaintiff Stephen Parziale resides in Massachusetts and has been a TIAA customer since 2021. Upon information and belief, Plaintiff Stephen Parziale's Confidential Information

was disclosed by TIAA to at least Google and LinkedIn without his knowledge or prior consent. Plaintiff Parziale uses the same browser to access his TIAA, LinkedIn, and Google accounts. As recently as 2025, Plaintiff Parziale entered his Confidential Information into the "Am I On Track" tool on the Website about fifteen times. Plaintiff Parziale was generally logged into his TIAA retirement account when he entered his Confidential Information into the "Am I On Track" tool on the Website. Unbeknownst to Plaintiff Parziale, the Google Analytics tags and the LinkedIn Insight Tags that TIAA installed on its website disclosed his Confidential Information to Google and LinkedIn, respectively.

80.     Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Parziale's computer, which inspection took place on May 1, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about May 1, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Parziale, was intercepted and directed to Google and LinkedIn.

81.     Plaintiff Jennie Canning resides in Pennsylvania and has been a TIAA customer since 2005. In the same manner as the other Plaintiffs, Plaintiff Canning's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without her knowledge or prior consent. As recently as 2025 Plaintiff Canning entered her Confidential Information into TIAA Systems using the same browser to access her TIAA, LinkedIn, and Google accounts. Plaintiff Canning was generally logged into her TIAA retirement accounts when she entered her Confidential Information. Unbeknownst to Plaintiff Canning, the Google Analytics trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed her Confidential Information to Google and LinkedIn, respectively.

CLASS ACTION COMPLAINT

82.     Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Canning's computer, which inspection took place on August 5, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about August 5, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Canning, was intercepted and directed to Google and LinkedIn.

83.     Plaintiff Elisa Seeherman resides in Pennsylvania and has been a TIAA customer since 1994. In the same manner as the other Plaintiffs, Plaintiff Seeherman 's Confidential Information was disclosed by TIAA to at least Google and LinkedIn without her knowledge or prior consent. As recently as 2025 Plaintiff Seeherman entered her Confidential Information into TIAA Systems using the same browser to access her TIAA, LinkedIn, and Google accounts. Plaintiff Seeherman was generally logged into her TIAA retirement accounts when she entered her Confidential Information. Unbeknownst to Plaintiff Seeherman, the Google Analytics trackers and the LinkedIn Insight Tags that TIAA installed on its website disclosed her Confidential Information to Google and LinkedIn, respectively.

84.     Plaintiffs employed a technical data team who examined each Plaintiff's device, including Plaintiff Seeherman's computer, which inspection took place August 7, 2025. The technical data team was asked to analyze each Plaintiff's browser-based communication with TIAA. That examination and analysis determined that on or about August 7, 2025 Confidential Information, communicated to and intended only for TIAA by Plaintiff Seeherman, was intercepted and directed to Google and LinkedIn.

85.     In addition to the specific information disclosures described above, TIAA made other disclosures of Plaintiffs' and Class Members' Confidential Information.

86.     For example, LinkedIn Insights tags are installed in TIAA's Retirement Journey Planner tool, which intercept and route to LinkedIn Confidential Information communicated to TIAA by Plaintiffs. The Confidential Information intercepted and routed to LinkedIn includes at least age, salary, retirement income and account balances.

87.     In addition to Google Analytics and LinkedIn Insights, several other Analytics Trackers are installed on TIAA Systems. For example, trackers from Microsoft, Adobe, Meta, Adobe, Reddit and Floodlight. On information and belief, one or more of these other Analytics Trackers are utilized in TIAA's disclosure of Confidential Information to additional Unauthorized Third Parties.

**C.     TIAA Knew That Unauthorized Third Parties Google and LinkedIn Use Customer Confidential Information for Their Own Unrestricted Commercial Use**

88.     Third Parties Google and LinkedIn use the Confidential Information disclosed to them by TIAA for their own unrestricted and unlimited commercial purposes. The Google Analytics Terms of Service provided to TIAA specifically address this issue:

You must post a Privacy Policy and that Privacy Policy must provide notice of Your use of cookies, identifiers for mobile devices (e.g., Android Advertising Identifier or Advertising Identifier for iOS) or similar technology used to collect data. You must disclose the use of Google Analytics, and how it collects and processes data. This can be done by displaying a prominent link to the site "How Google uses information from sites or apps that use our services", (located at www.google.com/policies/privacy/partners/, or any other URL that Google may provide from time to time). You will use commercially reasonable efforts to ensure that a User is provided with clear and comprehensive information about, and consents to, the storing and accessing of cookies or other information on the User's device where such activity occurs in connection with the Service and where providing such information and obtaining such consent is required by law.[17]

89.     The URL in the previous paragraph elaborates on Google's use of the information

---

[17] *Google Analytics Terms of Service*, GOOGLE MARKETING PLATFORM (May 15, 2023), https://marketingplatform.google.com/about/analytics/terms/us/ [https://perma.cc/4T5S-9VUV].

CLASS ACTION COMPLAINT

it intercepts, and routes to itself from systems like TIAA's:

Google uses the information shared by sites and apps to deliver our services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on our partners' sites and apps. See our Privacy Policy to learn more about how we process data for each of these purposes and our Advertising page for more about Google ads, how your information is used in the context of advertising, and how long Google stores this information.[18]

90.    Likewise, LinkedIn's Cookie Policy (effective June 3, 2022) expressly states that it uses the information collected for commercial purposes, such as advertising services:

[W]e use cookies and similar technologies such as pixels, local storage and mobile ad IDs (collectively referred to in this policy as 'cookies') to collect and use data as part of our Service, including for advertising purposes. …As noted in Section 1.4 of our Privacy Policy, outside Designated Countries [in Europe], we also collect (or rely on others who collect) information about your device where you have not engaged with our Services (e.g., ad ID, IP address, operating system and browser information) so we can provide our Members with relevant ads and better understand their effectiveness.[19]

91.    On information and belief, Unauthorized Third Parties like Google and LinkedIn provided these Terms of Services and Notices to TIAA, or otherwise made TIAA aware of them, at and during the time that TIAA provided disclosure of Plaintiffs Confidential Information to them.

**D.    <u>Plaintiffs Engaged TIAA in a Sensitive Financial Consultations By Communication of Confidential Information Through TIAA Systems</u>**

92.    Plaintiffs, seeking advice and clarity on financial issues, used the TIAA Systems, including the Am I On Track and Debt Illustrator tools, for multiple purposes, including

---

[18] *Technologies: How Google uses information from sites or apps that use our services*, GOOGLE: PRIVACY & TERMS, https://policies.google.com/technologies/partner-sites [https://perma.cc/U62K-6NKT](redirected from www.google.com/policies/privacy/partners) (accessed Feb. 3, 2026).

[19] *Cookie Policy*, LINKEDIN (June 3, 2022), https://www.linkedin.com/legal/cookie-policy [https://perma.cc/3PFB-MAR3].

CLASS ACTION COMPLAINT

retirement planning, saving and investing, addressing debt, IRAs, tax obligations, and general budgeting.

93.    Plaintiffs' use of the Online Tools to seek financial advice is the same as seeking advice from a personal financial advisor on a telephone call. In both cases, Plaintiffs were communicating private, sensitive and Confidential Information to TIAA and, in return, received confidential financial advice. The information that Plaintiffs provided and received was not communicated to anyone using the internet, but was intended to be made available only to TIAA.

94.    Whereas online browsing constitutes passive receipt of public-facing information in a digital forum, the use of TIAA Systems entails an active, bilateral communication of data in a person-to-person conversation. This interaction is specifically designed to provide personalized financial guidance, not general advice, making the Plaintiff communicating the Confidential Information a consumer of specialized services.

**E.    TIAA Disclosed Plaintiffs' Confidential Information to Unauthorized Third Parties Without Plaintiffs' Consent**

95.    The Google Analytics trackers and LinkedIn Insights Tag embedded in TIAA Systems, including at least the "Am I On Track" and "Debt Illustrator" tools were used without notice to Plaintiffs and without their consent to intercept Plaintiffs' Confidential Information.

96.    TIAA caused the interception of and disclosed at least the following Plaintiff Confidential Information:

a.   Plaintiffs' Debt, such as mortgages, credit cards, and loans;

b.   Assets owned by Plaintiffs and the value of those assets;

c.   Plaintiffs' annual salary and earnings details,

d.   Savings and Investments held by Plaintiffs, including accumulated savings, Retirement and Pension funds held by Plaintiffs;

CLASS ACTION COMPLAINT

e.  The financial habits of Plaintiffs related to saving, spending, and retirement objectives;

f.  Expected Social Security income;

g.  Searches made by the Plaintiffs on the TIAA site.

Digital tracking technology may be deployed by us or our service providers, on our behalf, for analytics, marketing, and interest-based advertising services. We and our service providers may rely on other third parties to deliver to you our interest-based advertising on websites or platforms that you may visit while online. TIAA and its service providers do not share your personal information with these third parties to enable interest-based advertising.

How to manage your digital tracking preferences

By visiting our **digital preference management center** ⬀, from the 'Do not sell/share my personal information link at the bottom of our homepage, you have the ability to review a current list of digital tracking technology that we allow on our sites and manage your digital tracking preferences, including opting out of interest-based advertising. Please note that your opt-out preferences will be stored in cookies and that if you clear your cookie cache or access our site from another device, we will not have the ability to identify you for the purpose of applying your opt-out choices, and you will need to opt out again.

Figure 13: Excerpt from Section of TIAA Privacy Notice on Digital Tracking Practices (published January 2024); (captured on the Internet Archive on December 12, 2024), https://web.archive.org/web/20241212181742/https%3A%2F%2Fwww.tiaa.org%2Fpublic%2Fsupport%2Fprivacy%2Fprivacy-notice.).

97.    As of December 12, 2024, the TIAA Privacy Notice on the Website promised Plaintiffs that, "TIAA and its service providers do not share your personal information with these third parties to enable interest-based advertising."[20] This can be seen in Figure 13 above. Despite

---

[20] *TIAA Privacy Notice* (published January 2024), TIAA.ORG (captured on the Internet Archive on December 12, 2024), https://web.archive.org/web/20241212181742/https%3A%2F%2Fwww.tiaa.org%2Fpublic%2Fsupport%2Fprivacy%2Fprivacy-notice; *TIAA Privacy Notice* (published July 2023), TIAA.ORG (captured on the Internet Archive on July 23, 2023), https://web.archive.org/web/20230723014240/https://www.tiaa.org/public/support/privacy/privacy-notice.

this policy statement, TIAA intentionally incorporated the Google Analytics trackers and LinkedIn Insight Tags into its website and permitted Google and LinkedIn to intercept and acquire Plaintiffs' and Class Members' Confidential Information and communications, while never disclosing that TIAA was doing so, and without first obtaining Plaintiffs consent as required by law.

98.    TIAA disclosed to Unauthorized Third Parties all or some of the following Plaintiffs' personal Confidential Information:

a.   Plaintiffs' Debt, such as mortgages, credit cards, and loans;

b.   Assets owned by Plaintiffs and the value of those assets;

c.   Plaintiffs' annual salary and earnings details,

d.   Savings and Investments held by Plaintiffs, including accumulated savings, Retirement and Pension funds held by Plaintiffs;

e.   The financial habits of Plaintiffs related to saving, spending, and retirement objectives;

f.   Expected Social Security income;

g.   Searches made by the Plaintiffs on the TIAA site; and

h.   IP addresses, cookies and other personal identifiers.

**F.    TIAA Is a Financial Institution Subject to Statutory Requirements That Define "Nonpublic Personal Information" and TIAA's Obligations to Plaintiffs Regarding Notice and Disclosure**

99.    The Federal Gramm-Leach-Bliley Act ("GLBA") defines the types and kinds of financial information that are confidential and warrant privacy protection. Under the GLBA, a Financial Institution has "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal

CLASS ACTION COMPLAINT

information." 18 U.S.C. §6801.

100.    TIAA is a "Financial Institution" as defined by the GLBA and is bound by the

GLBA.

101.    The GLBA limits the disclosure of "nonpublic personal information" by Financial

Institutions, which TIAA is required to follow. TIAA is and was well aware of these limits, but

ignored them as to the ongoing disclosure of Plaintiffs' Confidential Information.

102.    The GLBA defines "Personally identifiable financial information" as follows:

(4) **Nonpublic personal information** (A) The term "nonpublic personal information"
means **personally identifiable financial information**— (i) provided by a consumer to a
financial institution; (ii) resulting from any transaction with the consumer or any service
performed for the consumer; or (iii)otherwise obtained by the financial institution.
15 U.S.C. § 6809(4)(A).

103.    The FDIC prescribes the exact **type of notice** that must be provided to consumers

in order to obtain authorization for disclosure by the Financial Institution:

Privacy notices must be provided so that each recipient can reasonably be expected
to receive actual notice in writing, or if the consumer agrees, electronically. To meet
this standard, a financial institution could, for example, (1) hand deliver a printed
copy of the notice to its consumers, (2) mail a printed copy of the notice to a
consumer's last known address, or (3) for the consumer who conducts transactions
electronically, post the notice on the institution's web site and require the consumer
to acknowledge receipt of the notice as a necessary step to completing the
transaction.[21]

104.    The GLBA also requires the discloser, such as TIAA, to restrict, by contract, the

third parties to whom disclosure may be made:

If the financial institution provides the consumer's nonpublic personal information to
a nonaffiliated third party under the exception in section 13 (point 5 above), it must
provide notice of its privacy policies and practices to the consumer. Under the
exception in section 13, the financial institution must also enter into a contractual

---

[21] FDIC, *Consumer Compliance Examination Manual*, Chapter VII-1 Gramm-Leach-Bliley Act
(Privacy of Consumer Financial Information), accessed March 17, 2026,
https://www.fdic.gov/consumer-compliance-examination-manual/viii-1-gramm-leach-bliley-act-
privacy-consumer-financial.

agreement with the third party that prohibits the third party from disclosing or using the information other than to perform services for the institution or functions on the institution's behalf,

105.    The GLBA likewise specifies that:

[A] financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or **has provided to the consumer a notice** that complies with section 6803 of this title.

15 U.S.C. § 6802.

106.    TIAA failed to comply with these federal requirements by disclosing "nonpublic personal information" to "nonaffiliated third part[ies]" without notice. TIAA's failure to comply with the requirements of the GLBA is further evidence of their violation of the state laws of Maryland, California, Florida, Massachusetts, and Pennsylvania as pled here. In addition, upon information and belief, TIAA failed to contract with Google or LinkedIn to protect Plaintiffs' Confidential Information obtained from them or to limit its use to TIAA.

G.    **Plaintiffs Suffered Harm as a Result of Defendants' Action**

107.    TIAA does not have a legal right to disclose Plaintiffs' Confidential Information without their prior written consent to any third party, because this Confidential Information is protected from unauthorized disclosure by state law in each of the states in which they reside.

108.    Maintaining the privacy of their Confidential Information is valuable to Plaintiffs.

109.    Plaintiffs' Confidential Information was disclosed by TIAA in the manner described in the preceding paragraphs.

110.    Plaintiffs were unaware that their Confidential Information communicated to TIAA was being disclosed by TIAA to Unauthorized Third Parties when they used TIAA Systems to effectuate their communications and did not consent to such disclosure.

111.    Plaintiffs have suffered injury because of TIAA's conduct.

112.    Plaintiffs are entitled to statutory damages, punitive damages, and attorney's fees and costs to compensate them for their injuries as provided by state law.

## CLASS ACTION ALLEGATIONS

113.    Plaintiffs re-allege and incorporate by reference the allegations set forth above.

114.    The Proposed Class consists of all persons residing in the Five States who utilized TIAA's Systems to communicate personal Confidential Information to TIAA for the purpose of obtaining financial services from TIAA, and such Confidential Information was disclosed by TIAA, in whole or in part, to Unauthorized Third Parties without their consent as required by the two-party consent laws of the Five States.

115.    Excluded from the proposed Class and Subclasses are: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) TIAA, TIAA's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which TIAA or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiffs' counsel, experts, and consultants and TIAA's counsel, experts, and consultants.

116.    Plaintiffs reserve the right to redefine the Class or identify Subclasses at, or prior to, the class certification stage, in response to discovery or pursuant to instructions by the Court.

117.    Plaintiffs seek certification of this matter as a class action pursuant to violation by TIAA of the following statutes:

a.    Maryland Rules of Civil Procedure § 2-231 et seq.

b.    California Code, Code of Civil Procedure § 382 et seq.

c.    Florida Rule of Civil Procedure § 1.220(a) et seq.

d.    Massachusetts Rule of Civil Procedure 23.

e.        Pennsylvania Rules of Civil Procedure § 1701 et seq.

118.    These Five States' laws are wholly consistent in their respective prohibition of the disclosure of Confidential Information communicated to TIAA to Unauthorized Third Parties absent prior consent of Plaintiffs to do so. Subclasses for the class members from each state may be proposed (1) to account for the differences in the length of the statutes of limitations, which vary by state, and (2) for the assessment of statutory and punitive damages which may vary by state law.

119.    **Numerosity**: While the exact number of Class Members is unknown to Plaintiffs at this time, the Class, based on information and belief, consists of tens of thousands of people dispersed throughout the Five States from among the more than five million active and retired customers for whom TIAA claims to be currently providing financial services. This large number of class members renders it impracticable to join them in this action. The exact number of Class Members will be determined after Plaintiffs have reviewed information maintained by TIAA.

120.    **Commonality and Predominance:** The proposed class members' claims share common questions of law or fact, predominate over any questions affecting only individual members, and the claims of the proposed class representatives are typical of those for the rest of the class. All proposed class members utilized the same TIAA Systems for the communication of the same types of Confidential Information to TIAA, which information was systematically disclosed without their consent to Unauthorized Third Parties, including Google and LinkedIn. The Confidential Information was disclosed by TIAA to these Unauthorized Third Parties by providing them access to TIAA Systems and permitting the deployment of Analytic Trackers to intercept and transfer Class Members Confidential Information to Unauthorized Third Parties for their unlimited use and further disclosure. The laws of the Five States all prohibit such

CLASS ACTION COMPLAINT

disclosures absent notice and consent of the class member. Proceeding by way of this class action will be superior to any other available method for resolving this dispute. A class action will generate common answers to the questions below, which are apt to drive resolution:

Whether TIAA's conduct violates the two-party consent law of the Five States in which class members reside;

Whether Plaintiffs are entitled to injunctive relief; and

Whether Plaintiffs are entitled to statutory, punitive or other forms of damages, attorney's fees and costs, and other monetary relief.

112.    Because TIAA engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of Class Members, identical statutory violations, business practices, and injuries are involved for each Class Member. Individual questions, if any, pale by comparison, in both quantity and quality, to the common questions that dominate this action.

121.    **Typicality:** Plaintiffs' claims are typical of the claims of all other Class Members and Plaintiffs have substantially the same interest in this matter as other Class Members. Plaintiffs have no interests that are antagonistic to, or in conflict with, the interests of other members of the Class. Plaintiffs' claims arise out of the same set of facts and conduct as all other Class Members. Plaintiffs are TIAA customers and users of TIAA Systems and are victims of TIAA's unauthorized, common, and systemwide disclosures of their private information to Unauthorized Third Parties.

122.    **Adequacy of Representation:** Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are coincident with, and not antagonistic to, those of other Class Members they seek to represent.

Plaintiffs have no disabling conflicts with Class Members. Accordingly, Plaintiffs are adequate representatives of the Class and, along with counsel, will fairly and adequately protect the interests of the Class.

123.    **Superiority:** A class action is the superior method for fair and efficient adjudication of this dispute. Although all Class Members have claims against TIAA, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. The damages, harm, and other financial detriment suffered individually by Plaintiffs are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against TIAA, making it impractical for Class Members to individually seek redress for TIAA's wrongful conduct. Moreover, serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of individual claims. The prosecution of separate actions by individual Class Members could create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for TIAA or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the members of the Class Members who are not parties to the adjudications. If a class action is not permitted, Class Members will continue to suffer losses and TIAA's misconduct will continue without restraint.

124.    Plaintiffs anticipate no unusual difficulties in the management of this litigation as a class action. The Class is readily ascertainable, and direct notice can be provided from the records maintained by TIAA, electronically or by publication, the cost of which is properly imposed on TIAA.

**COUNT I**
**VIOLATION OF MARYLAND WIRETAPPING AND**
**ELECTRONIC SURVEILLANCE ACT**
**Md. Code, Cts. & Jud. Proc. §§ 10-401 *et seq.***

125.    Plaintiffs residing in the State of Maryland repeat the allegations contained in the paragraphs above as if fully set forth herein and bring this count individually and on behalf of all other Plaintiffs against Defendants.

126.    The Maryland Wiretapping and Electronic Surveillance Act ("The Maryland Wiretap Act") makes it unlawful for any person to: Willfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle. Md. Code, Cts. & Jud. Proc. § 10-402.

127.    Under the Maryland Wiretap Act, "person" is "any individual, partnership, association, joint stock company, trust, or corporation." Md. Code, Cts. & Jud. Proc. § 10-401(14).

128.    Defendants, as corporate entities, are persons for purposes of the Maryland Wiretap Act.

129.    Google, LinkedIn and other Unauthorized Third Parties, as corporate entities, are persons for purposes of the Maryland Wiretap Act as corporate entities.

130.    Under the Maryland Wiretap Act, "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system." Md. Code, Cts. & Jud. Proc. § 10-401(5).

131.    Under the Maryland Wiretap Act, "intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any

CLASS ACTION COMPLAINT

electronic, mechanical, or other device." Md. Code, Cts. & Jud. Proc. § 10-401(10).

132. Unauthorized Third Parties, such as Google and LinkedIn, are not parties to Plaintiffs' confidential electronic communications of Plaintiffs' Confidential Information with TIAA.

133. TIAA willfully discloses the contents of Plaintiffs' electronic communications of Confidential Information to TIAA, through and by the use of one or more of the following, each of which, alone or combined, constitute a "device" under the Maryland Wiretap Act:

a. Analytics Trackers, like those TIAA permits to be used to intercept and route Plaintiffs' Confidential Information to Unauthorized Third Parties including, but not limited to the LinkedIn Insight Tag and the Google Analytics tracker;

b. Plaintiffs' browsers used to download and access TIAA's Online Tools and communicate Plaintiffs' Confidential Information; and

c. Plaintiffs' computers and/or mobile devices used to download and access TIAA Systems, download Online Tools and communicate Confidential Information to TIAA using Plaintiffs' browsers.

134. Plaintiffs' communication of Confidential Information from their computers and/or mobile devices to TIAA is a transfer of signs, signals, writing, images, sounds, data, or intelligence by a wire and/or radio system.

135. TIAA knowingly provides Unauthorized Third Parties access to TIAA's communication systems and knowingly provides for the installation of Analytics Trackers to TIAA's communication systems, which the Unauthorized Third Parties used to intercept Plaintiffs' electronically communicated Confidential Information and route such information to these Unauthorized Third Parties.

136. The Analytics Trackers automatically directed, and continue to direct, Plaintiffs' electronically communicated Confidential Information to Unauthorized Third Parties including Google and LinkedIn.

137. TIAA willfully disclosed, continues to disclose and/or endeavors to disclose, to Unauthorized Third Parties Google and LinkedIn, among others, the contents of Plaintiffs' electronically communicated Confidential Information.

138. TIAA knows or has reason to know that the Confidential Information that it discloses was obtained through the interception of an electronic communication at least because TIAA knowingly permitted the interception by permitting the addition of Analytics Trackers to its systems.

139. Plaintiffs' intercepted Confidential Information constitutes the "contents" of electronic communications within the meaning of the Maryland Wiretap Act.

140. Plaintiffs have not, at any time, provided their consent to having their electronic communications with TIAA intercepted by and disclosed to Unauthorized Third Parties.

141. Pursuant to Md. Code, Cts. & Jud. Proc. § 10-410, Plaintiffs are entitled to (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

142. TIAA's knowing and intentional conduct in violation of Maryland state law is wanton, reckless and malicious mandating the application of punitive damages.

143. TIAA's unlawful conduct is ongoing, and TIAA continues to unlawfully and willfully disclose the confidential electronic communications of Plaintiffs. TIAA's continued disclosure of Plaintiffs' Confidential Information will cause Plaintiffs to suffer irreparable harm,

entitling them to declaratory and injunctive relief to prevent future illegal disclosures and interceptions.

## COUNT II
## VIOLATION OF CALIFORNIA INVASION OF PRIVACY ACT
### Cal. Penal Code §§ 631(a), 637.2 *et seq.*

144.    Plaintiffs residing in the State of California repeat the allegations contained in the paragraphs above as if fully set forth herein.

145.    The purpose of the California Invasion of Privacy Act ("CIPA") is to "protect the right of privacy of the people of [California]" from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . ." Cal. Penal Code § 630.

146.    CIPA makes it unlawful for any person "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a).

147.    Defendants, as corporate entities, are persons for purposes of CIPA.

148.    Google, LinkedIn and other Unauthorized Third Parties, as corporate entities, are persons for purposes of CIPA.

149.    Under CIPA, "electronic communication" is "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Cal. Penal Code § 629.51(a)(2).

150.    Unauthorized Third Parties, such as Google and LinkedIn, are not parties to Plaintiffs' confidential electronic communications of Plaintiffs' Confidential Information with TIAA.

151.    At all relevant times and without the authorization or consent of Plaintiffs, TIAA installed and used software approved by Unauthorized Third Parties such as Google and LinkedIn that intercepted and disclosed to such Unauthorized Third Parties Plaintiffs' internet communications, including their Confidential Information, on the Website as they made investment and financial planning decisions.

152.    Through these interceptions and disclosures, TIAA intended for Unauthorized Third Parties to learn some meaning of the content the consumers communicated.

153.    Under CIPA, "contents" of a communication is any information concerning the substance, purport, or meaning of that communication.

154.    TIAA aids, agrees with, employs, or conspires with Unauthorized Third Parties including Google and LinkedIn to willfully and without the consent of Plaintiffs, read and/or attempt to read or learn the contents, substance, purport or meaning of Plaintiffs' electronic communication of Confidential Information being transmitted by the Plaintiffs to TIAA over the internet, and/or to use, attempt to use or communicate Plaintiffs' Confidential Information so obtained.

155.    Unauthorized Third Parties including Google and LinkedIn, read and/or attempt to read or learn the contents, substance, purport or meaning of Confidential Information received through the Analytics Trackers and/or use, attempted to use, or communicate the Confidential Information received through the Analytics Trackers, including by exploiting and monetizing the data in advertising services.

CLASS ACTION COMPLAINT

156.    The Confidential Information intercepted through TIAA's use of Analytics Trackers constitutes protected personal information.

157.    As a result of the above violations, Defendants are liable to Plaintiffs in the amount of $5,000 per violation or three times the amount of actual damages, whichever is greater, pursuant to Cal. Penal Code § 637.2.

158.    Under the CIPA, Defendants are also liable for reasonable attorney's fees and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendants in the future.

159.    TIAA's knowing and intentional conduct in violation of CIPA is wanton, reckless and malicious mandating the application of punitive damages.

160.    TIAA's unlawful conduct is ongoing, and TIAA continues to unlawfully and intentionally aid Unauthorized Third Parties including Google and LinkedIn in their reading and using of Plaintiffs' Confidential Information, which will cause Plaintiffs to suffer irreparable harm, entitling them to declaratory and injunctive relief to prevent TIAA's conduct.

**COUNT III**
**VIOLATION OF FLORIDA SECURITY OF COMMUNICATIONS ACT**
**Fla. Stat. §§ 934.03, 934.10 *et seq.***

161.    Plaintiffs residing in Florida repeat the allegations contained in the paragraphs above as if fully set forth herein.

162.    The Florida Security of Communications Act ("SCA") makes it unlawful for any person to "[i]ntentionally disclose[], or endeavor[] to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." Fla. Stat. § 934.03.

163.   Under the SCA, "person" is "any employee or agent of the State of Florida or political subdivision thereof, of the United States, or of any other state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." Fla. Stat. § 934.02(5).

164.   Defendants, as corporate entities, are persons for purposes of the SCA.

165.   Google, LinkedIn and other Unauthorized Third-Parties are persons for purposes of the SCA as corporate entities.

166.   Under the SCA, "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce." Fla. Stat. § 934.02(12).

167.   Under the SCA, "intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3).

168.   Unauthorized Third Parties, such as Google and LinkedIn, are not parties to Plaintiffs' confidential electronic communications of Plaintiffs' Confidential Information with TIAA.

169.   TIAA intentionally discloses, and Unauthorized Third Parties such as Google and LinkedIn intentionally intercept and acquire, the contents of Plaintiffs' electronic communications of Confidential Information to TIAA by the use of one or more of the following, each of which, alone or combined, constitute a "device" under the SCA:

a.    Analytics Trackers, like those TIAA permits to be used to intercept and route Plaintiffs' Confidential Information to Third Partis, including the LinkedIn Insight Tag and the Google Analytics tracker;

b.    Plaintiffs' browsers used to download and access TIAA's Online Tools and communicate Plaintiffs' Confidential Information; and

c.    Plaintiffs' computers and/or mobile devices used to download and access TIAA Systems , download Online Tools and communicate Confidential Information to TIAA using Plaintiffs' browsers.

170.    Plaintiffs' communication of Confidential Information from their computers and/or mobile devices to TIAA is a transfer of signs, signals, writing, images, sounds, data, or intelligence by a wire and/or radio system that affects intrastate, interstate, and/or foreign commerce.

171.    TIAA knowingly provided Unauthorized Third Parties access to TIAA's communication systems and knowingly provided for the installation of Analytics Trackers to TIAA's communication systems, which the Unauthorized Third Parties used to intercept Plaintiffs' electronically communicated Confidential Information and route such information to these Unauthorized Third Parties.

172.    The Analytics Trackers automatically direct and Florida Plaintiffs' electronically communicated Confidential Information to Unauthorized Third Parties including Google and LinkedIn.

173.    TIAA intentionally disclosed, continues to disclose and/or endeavors to disclose, to Unauthorized Third Parties Google and LinkedIn, among others, the contents of Plaintiffs' electronically communicated Confidential Information.

174.    TIAA knows or has reason to know that the Plaintiff Confidential Information that it discloses was obtained through the interception of an electronic communication at least because TIAA knowingly permitted the interception by permitting the addition of Analytics Trackers to its systems.

175.    Plaintiffs' intercepted Confidential Information constitute the "contents" of electronic communications within the meaning of the SCA.

176.    Plaintiffs have not, at any time, provided their consent to having their electronic communications with TIAA intercepted by and disclosed to Unauthorized Third Parties.

177.    Pursuant to Fla. Stat. § 934.10, Plaintiffs are entitled to (1) actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

178.    TIAA's knowing and intentional conduct in violation of Florida state law is willful, wanton, reckless, malicious, in bad faith and with a reckless disregard for Plaintiffs, mandating the application of punitive damages.

179.    TIAA's unlawful conduct is ongoing, and TIAA continues to unlawfully and intentionally disclose the confidential electronic communications of Plaintiffs.

180.    TIAA's continued disclosure of Plaintiffs' Confidential Information will cause Plaintiffs to suffer irreparable harm, entitling them to declaratory and injunctive relief to prevent future illegal disclosures and interceptions.

## COUNT IV
## VIOLATION OF MASSACHUSETTS WIRETAP ACT
### Mass. Gen. Laws Chapter 272, § 99.

181.    Plaintiffs residing in Massachusetts repeat the allegations contained in the paragraphs above as if fully set forth herein.

182.    The Massachusetts Wiretap Act makes it unlawful for any person to "willfully disclose[] or attempt[] to disclose to any person the contents of any wire or oral communication, knowing that the information was obtained through interception."

183.    Under the Massachusetts Wiretap Act, "person" is "any individual, partnership, association, joint stock company, trust, or corporation, whether or not any of the foregoing is an officer, agent or employee of the United States, a state, or a political subdivision of a state."

184.    Defendants, as corporate entities, are persons for purposes of the Massachusetts Wiretap.

185.    Google, LinkedIn and other Unauthorized Third-Parties are persons for purposes of the Massachusetts Wiretap Act as corporate entities.

186.    Under the Massachusetts Wiretap Act, "wire communication" is "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception."

187.    Under the Massachusetts Wiretap Act, "interception" means "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication.

188.    Under the Massachusetts Wiretap Act, "intercepting device" includes "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication."

189.    Unauthorized Third Parties, such as Google and LinkedIn, are not parties to Plaintiffs' confidential electronic communications of Plaintiffs' Confidential Information over

CLASS ACTION COMPLAINT

the internet with TIAA.

190.    TIAA intentionally discloses, and Unauthorized Third Parties such as Google and LinkedIn willfully and secretly acquire, transmit, receive and record the contents of Plaintiffs' electronic communications of Confidential Information to TIAA by the use of one or more of the following, each of which, alone or combined, constitute an "intercepting device" under the Massachusetts Wiretap Act:

a.    Analytics Trackers, like those TIAA permits to be used to intercept and route Plaintiffs' Confidential Information to Unauthorized Third Parties, including the LinkedIn Insight Tag and the Google Analytics tracker;

b.    Plaintiffs' browsers used to download and access TIAA's Online Tools and communicate Plaintiffs' Confidential Information; and

c.    Plaintiffs' computers and/or mobile devices used to download and access TIAA Systems, download Online Tools and communicate Confidential Information to TIAA using Plaintiffs' browsers.

191.    Plaintiffs' communication of Confidential Information from their computers and/or mobile devices to TIAA is a communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between Plaintiffs and TIAA.

192.    TIAA knowingly provided Unauthorized Third Parties access to TIAA's communication systems and knowingly provided for the installation of Analytics Trackers to TIAA's communication systems, which the Unauthorized Third Parties used to intercept Plaintiffs' electronically communicated Confidential Information and route such information to these Unauthorized Third Parties.

193.    The Analytics Trackers automatically and secretly direct and directed Massachusetts Plaintiffs' wire communications of Confidential Information to Unauthorized Third Parties including Google and LinkedIn.

194.    TIAA willfully disclosed, continues to disclose and/or endeavors to disclose, to Unauthorized Third Parties Google and LinkedIn, among others, the contents of Massachusetts Plaintiffs' wire communication of Confidential Information.

195.    TIAA knows or has reason to know that the Massachusetts Confidential Information that it discloses was obtained through the interception of a wire communication at least because TIAA knowingly permitted the interception by permitting the addition of Analytics Trackers to its systems.

196.    Plaintiffs' intercepted Confidential Information constitutes the "contents" of a wire communication within the meaning of the Massachusetts Wiretap Act.

197.    Plaintiffs have not, at any time, provided their consent to having their electronic communications with TIAA intercepted by and disclosed to Unauthorized Third Parties.

198.    Pursuant to the Massachusetts Wiretap Act, Plaintiffs are entitled to (1) actual damages but not less than liquidated damages computed at the rate of $100 per day for each day of violation or $1000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

199.    TIAA's knowing and intentional conduct in violation of Massachusetts state law is willful, wanton, reckless, malicious, in bad faith and with a reckless disregard for Plaintiffs, mandating the application of punitive damages.

200.    TIAA's unlawful conduct is ongoing, and TIAA continues to unlawfully and willfully disclose the confidential wire communications of Plaintiffs.

CLASS ACTION COMPLAINT

201.    TIAA's continued disclosure of Plaintiffs' Confidential Information will cause Plaintiffs to suffer irreparable harm, entitling them to declaratory and injunctive relief to prevent future illegal disclosures and interceptions.

**COUNT V**
**VIOLATION OF PENNSYLVANIA'S WIRETAPPING AND ELECTRONIC SURVEILLANCE CONTROL ACT**
**18 Pa.C.S. § 5725 *et seq.***

202.    Plaintiffs residing in the State of Pennsylvania repeat the allegations contained in the paragraphs above as if fully set forth herein.

203.    The Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") makes it unlawful for a person to: "intentionally disclose or endeavor to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication." 18 Pa. Stat. and Cons. Stat. § 5703.

204.    Under WESCA, a "person" is "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 Pa. Stat. and Cons. Stat. § 5725.

205.    Defendants, as corporate entities, are persons for purposes of WESCA.

206.    Google, LinkedIn and other Unauthorized Third Parties, as corporate entities, are persons for purposes of WESCA as corporate entities.

207.    Under WESCA, "electronic communication" is "transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. Stat. and Cons. Stat. § 5725.

208.    Under WESCA, "intercept" means "[a]ural or other acquisition of the contents of

61

any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Stat. and Cons. Stat. § 5725.

209.    Unauthorized Third Parties, such as Google and LinkedIn, are not parties to Plaintiffs' confidential electronic communications of Plaintiffs' Confidential Information with TIAA.

210.    TIAA intentionally discloses, and Unauthorized Third Parties such as Google and LinkedIn intentionally intercept and acquire, the contents of Plaintiffs' electronic communications of Confidential Information to TIAA by the use of one or more of the following, each of which, alone or combined, constitute a "device" under WESCA:

a.    Analytics Trackers, like those TIAA permits to be used to intercept and route Florida Plaintiffs' Confidential Information to Third Parties, including the LinkedIn Insight Tag and the Google Analytics tracker;

b.    Plaintiffs' browsers used to download and access TIAA's Online Tools and communicate Pennsylvania Plaintiffs' Confidential Information; and

c.    Plaintiffs' computers and/or mobile devices used to download and access TIAA Systems, download Online Tools and communicate Confidential Information to TIAA using Plaintiffs' browsers.

211.    Plaintiffs' communication of Confidential Information from their computers and/or mobile devices to TIAA is a transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire and/or radio system.

212.    TIAA knowingly provided Unauthorized Third Parties access to TIAA's communication systems and knowingly provided for the installation of Analytics Trackers to TIAA's communication systems, which the Unauthorized Third Parties used to intercept

Plaintiffs' electronically communicated Confidential Information and route such information to these Unauthorized Third Parties.

213.    The Analytics Trackers automatically direct and directed Plaintiffs' electronically communicated Confidential Information to Unauthorized Third Parties including Google and LinkedIn.

214.    TIAA intentionally disclosed, continues to disclose and/or endeavors to disclose, to Unauthorized Third Parties Google and LinkedIn, among others, the contents of Plaintiffs' electronically communicated Confidential Information.

215.    TIAA knows or has reason to know that the Plaintiffs' Confidential Information that it discloses was obtained through the interception of an electronic communication at least because TIAA knowingly permitted the interception by permitting the addition of Analytics Trackers to its systems.

216.    Plaintiffs' intercepted Confidential Information constitute the "contents" of electronic communications within the meaning of WESCA.

217.    Plaintiffs have not, at any time, provided their consent to having their electronic communications with TIAA intercepted by and disclosed to Unauthorized Third Parties.

218.    Pursuant to 18 Pa. Stat. and Cons. Stat. § 5725, TIAA is liable to Plaintiffs for (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.

219.    TIAA's knowing and intentional conduct in violation of Pennsylvania state law is outrageous, willful, wanton, reckless, malicious, oppressive and with a reckless indifference for Plaintiffs, mandating the application of punitive damages.

220.    TIAA's unlawful conduct is ongoing, and TIAA continues to unlawfully and intentionally disclose the electronic communications of Plaintiffs.

221.    TIAA's continued disclosure of Plaintiffs' Confidential Information will cause Plaintiffs to suffer irreparable harm, entitling them to declaratory and injunctive relief to prevent future illegal disclosures and interceptions.

## TOLLING OF STATUTE OF LIMITATION, CONCEALMENT AND ESTOPPEL

222.    The applicable statutes of limitation under each of the Five States' laws were tolled because of TIAA's knowing and affirmative acts intended to conceal their illegal conduct as alleged herein. These Analytics Trackers are purposefully designed and integrated in a way that makes them unidentifiable to the TIAA System user. Their presence can only be discovered by means significantly more sophisticated than that possessed by the average internet user. TIAA permitted the Third-Party tracking tools to be incorporated into its System to intercept Plaintiffs' Confidential Information from the communications between Plaintiffs and TIAA, while affirmatively advising TIAA System users through its Privacy Policy that it would not disclose user's private information.

223.    TIAA's Privacy Notice published January 2025 (the "2025 Policy"), contain express misrepresentations by directly and falsely stating that TIAA would *not* disclose Plaintiffs' personal information to outside companies, such as the Unauthorized Third Parties, without Plaintiffs' prior consent or where TIAA was legally permitted to do so. This can be seen in Figure 14 below. These statements conveyed to Plaintiffs that TIAA would provide notice or obtain consent prior to disclosing any Confidential Information, and that TIAA would abide by state laws:

> We will not disclose your personal information to anyone outside of the TIAA Companies unless: 1) we have received proper consent from

you; 2) we are legally permitted to do so; or 3) we reasonably believe, in good faith, that we are legally required to do so.



Figure 14: Section of TIAA's Privacy Notice from 2024 on Disclosure of Information (published January 2024; captured on the Internet Archive on December 12, 2024).

224.    TIAA affirmatively concealed its disclosures by providing specific warranties that misled Plaintiffs into believing their Confidential Information was secure, thereby obviating their need to investigate further. Each of the following warranties, seen in Figure 15 on the TIAA website, are false and misleading:

CLASS ACTION COMPLAINT

(1) TIAA protects the personal information you provide against unauthorized access, disclosure, alteration, destruction, loss, or misuse.

(2) Your personal information is protected by physical, electronic, and procedural safeguards in accordance with federal and state standards. These safeguards include appropriate procedures for access and use of electronic data, provisions for the secure transmission of sensitive personal information on our website, and telephone system authentication procedures.

(3) Additionally, we limit access to your personal information to those TIAA employees and agents who need access in order to offer and provide products or services to you.

(4) We also require our service providers to protect your personal information by utilizing the privacy and security safeguards required by law.



Figure 15: Section of TIAA's Privacy Notice from 2024 on Security of Information (Exhibit C) (published January 2024; captured on the Internet Archive on December 12, 2024).

225.    TIAA affirmatively concealed its illegal disclosure of Plaintiffs' Confidential Information by publishing privacy policy statements contrary to the true facts, which were intended to mislead Plaintiffs by providing them with false confirmations and warranties that

their communications with TIAA and the Confidential Information contained in these communications were secure. Such false and misleading formal policy statements induced Plaintiffs to accept the purported safety and security of their Confidential Information and to forego any independent investigation of TIAA's actions.

226.    Because of these affirmative acts of concealment, the statutes of limitations applicable to the laws of the Five States in which Plaintiffs reside should be tolled to permit the inclusion in the Class of persons whose disclosures of Confidential Information by TIAA occurred outside of the statutory period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, ask for judgment in their favor, and that the Court enter an order as follows:

a.    Certifying the Class, and appointing Plaintiffs as Class representatives;

b.    Appointing Plaintiffs' counsel as Class counsel;

c.    Finding that TIAA's conduct as alleged herein was unlawful;

d.    Awarding such injunctive and other equitable relief as the Court deems just and proper, including enjoining TIAA from making any further disclosure of Plaintiffs' and Class Members' communications to Unauthorized Third Parties without the Plaintiffs' and Class Members' prior express, informed, and written consent;

e.    Awarding compensatory damages to Plaintiffs pursuant to statute in an amount to be proved at trial, but not less than $30,000,000;

f.    Awarding Plaintiffs consequential and punitive damages as permitted by statute;

g.    Awarding Plaintiffs pre-judgment and post-judgment interest as provided by law;

h.    Awarding Plaintiffs reasonable attorney's fees, costs, and expenses as provided by statute;

CLASS ACTION COMPLAINT

i.   Awarding costs of suit; and

j.   Such other and further relief to which Plaintiffs may be entitled.

### JURY DEMAND

Plaintiffs, on behalf of themselves and the Class, hereby demand a jury trial on all issues so triable.

DATED: March 26, 2026

/s/ *John R. Grimm*

Douglas M. Bregman (No. 02131)
John R. Grimm (No. 19223)
BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC
7315 Wisconsin Ave.
Suite 800 West
Bethesda, MD 20814
301-656-2707
301-961-6525 (Fax)
dbregman@bregmanlaw.com
jgrimm@bregmanlaw.com

*Attorneys for Plaintiffs and the Class*

Robert F. Ruyak *(application for admission forthcoming)*
S. Gregory Herrman *(pro hac vice application forthcoming)*
Karen E. Huber *(application for admission forthcoming)*
Matthew M. Beckwith *(pro hac vice application forthcoming)*
LARSON LLP
900 17th Street NW, Suite 200
Washington, D.C. 20006
Telephone: (202) 795-4900
Facsimile: (202) 795-4888
rruyak@larsonllp.com
gherrman@larsonllp.com
khuber@larsonllp.com
mbeckwith@larsonllp.com

*Attorneys for Plaintiffs and the Class*

Stephen G. Larson *(pro hac vice application forthcoming)*
Paul A. Rigali *(pro hac vice application forthcoming)*
Dana M. Howard *(pro hac vice application forthcoming)*
LARSON LLP
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000
slarson@larsonllp.com
prigali@larsonllp.com
dhoward@larsonllp.com

*Attorneys for Plaintiffs and the Class*

CLASS ACTION COMPLAINT