**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

REMI CHIU, BILAL ASKARYAR, SHIREE SOUTHERLAND, CARLZEN BALAGOT, KOURTNEY RUSOW, JACQUELINE SLATER, CALEB OBERST, STEPHEN PARZIALE, JENNIE CANNING, AND ELISA SEEHERMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED,

*Plaintiffs*,

vs.

TIAA BOARD OF GOVERNORS, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, COLLEGE RETIREMENT EQUITIES FUND, TEACHERS ADVISORS, LLC, TIAA-CREF INVESTMENT MANAGEMENT, LLC, TIAA-CREF INDIVIDUAL & INSTITUTIONAL SERVICES, LLC, TIAA TRUST, N.A., AND TIAA WEALTH INVESTMENT MANAGEMENT, LLC,

*Defendants*.

Case No.: Case No. 1:26-cv-01230-ABA

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. SUMMARY OF FACTUAL ALLEGATIONS ....................2

II. LEGAL STANDARD ....................6

III. ARGUMENT ....................7

- A. Plaintiffs Have Established Article III Standing ....................7
- B. The Complaint Sufficiently Pleads the "Contents" of All Disclosed Communications ....................12
- C. The Complaint Sufficiently, and Clearly, Pleads That TIAA Performed the Requisite Acts ....................12
- D. Plaintiffs Sufficiently Plead Their Massachusetts-Specific Claims....................13
- E. Plaintiffs Sufficiently Plead Their California-Specific Claim ....................16
- F. Plaintiffs Sufficiently Plead "Disclosure" of "Contents" of Communication Between TIAA and the Maryland, Pennsylvania, and Florida Plaintiffs ....................19
- G. Statute of Limitations and Tolling Determinations are Premature ....................22
- H. The Complaint's Class Allegations Are Sufficient At This Juncture ....................24
- I. Territorial and Choice of Law Defects Claimed by TIAA are Red Herrings ....................25

IV. CONCLUSION ....................26

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Arndt v. Gov't. Emps. Ins. Co.*,
750 F. Supp. 3d 518 (D. Md, 2024) ....................10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................6, 7

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................22

*Cabela's, LLC Wiretapping Litigation,*
175 F.4th 423 (3rd Cir. 2026) ....................11

*Clancy v. The Bromley Tea Co.*,
308 F.R.D. 564 (N.D. Cal. 2013) ....................26

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................22

*Cole v. Quest Diagnostics Inc.*,
No. 2:23-cv-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025) ....................17, 18

*In re Consumer Vehicle Driving Data Tracking Collection*
No. 1:24-MD-3115-TWT, 2026 WL 1092882, (N.D. Ga. Apr. 22, 2026) ....................14

*Cummins v. Ascellon Corp.*,
No. DKC-19-2953, 2020 WL 6544822 (D.Md. Nov. 6, 2020) ....................24

*Davis v. Federal Election Commission*,
554 U.S. 724 (2008) ....................8

*Doe v. Microsoft Corp*.,
No. C23-0718-JCC, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....................26

*Doe v. Shady Grove Reproductive Science Center, P.C.*,
No. 24-cv-2368-ABA, 2025 WL 2781542 (D. Md. Sept. 30, 2025) .................... *passim*

*Expressions Hair Design v. Schneiderman*,
581 U.S. 37 (2017) ....................18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................18

*Garcia v. Truist Fin. Corp.*,
825 F. Supp. 3d 1149 (C.D. Cal. 2026) ....................18, 19

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ....................8

*In re Google Inc.*,
No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................26

*Hernandez v. Noom, Inc.*,
No. 1:23-cv-00641-JRR, 2023 WL 8934019 (D. Md. Dec. 27, 2023) ....................10, 11

*Herzman v.Smile Brands Inc.*,
No. 25-cv-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ....................10

*Higgins v. McDonald*,
No. CV RDB-25-1695, 2026 WL 111330 (D. Md. Jan. 15, 2026)....................1

*Houck v. Substitute Trustee Services, Inc.*,
791 F.3d 473 (4th Cir. 2015) ....................7

*Howell v. Cnty. Comm. of Hampshire County*,
No. 21-1023, 2022 WL 61428 (4th Cir. Jan. 6, 2022)....................22

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)....................20

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) ....................23

*Karwowski v. Gen Digital, Inc.*,
No. 24-7213, 2025 WL 3002610 (9th Cir. Oct. 27, 2025) ....................19

*Kauffman v. Papa John's Int'l, Inc.*,
No. 22-CV-1492-L-MSB, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ....................22

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................23

*Lowy v. Daniel Def., LLC*,
167 F.4th 175 (4th Cir. 2026) ....................7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................23

*Mikulsky v. Bloomingdale's, LLC*,
Nos. 24-3564, 24-3837, 2025 WL 1718225 (9th Cir. June 20, 2025) .................................... 19

*Myers v. Dick's Sporting Goods, Inc.*,
No. 2:25-cv-03241-DJC-CKD, 2026 WL 1045528 (E.D. Cal. Apr. 16, 2026) ....................... 11

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ..................................................................................... 6

*In re Nickelodeon Cons. Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ................................................................................. 17, 18

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) ............................................................................... 10, 11

*Robertson v. Sea Pines Real Est. Companies, Inc.*,
679 F.3d 278 (4th Cir. 2012) ..................................................................................... 7

*Slaey v. Adams*,
No. 1:08cv354, 2008 WL 5377937 (E.D. Va. Dec. 23, 2008) ............................................... 22

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........................................................................ 23

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................................. 8

*Straubmuller v. JetBlue Airways Corp.*,
No. 23-cv-384-DKC, 2023 WL 5671615 (D. Md. Sept. 1, 2023) ................................... 11, 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ................................................................................................. 8

*Turner v. Nuance Comm'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........................................................................ 23

*United States v. Kubrick*,
444 U.S. 111 (1979) ................................................................................................ 22

*Woodward v. GEICO Advantage Ins. Co.*,
No. CV GTR-21-21-952, 2022 WL 2953053 (D. Md. July 25, 2022) .................................. 24

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................................ 23

**Other State Cases**

*Pine v. Rust*,
535 N.E.2d 1247 (1989) ........................................................................................... 15

*Vita v. New England Baptist Hospital*,
243 N.E.3d 1185 (2024) ....................13, 14, 15

**Federal Statutes**

Federal Wiretap Act ....................18, 20

**Other State Statutes**

Maryland Wiretapping and Electronic Surveillance Act ....................20

**Other Authorities**

Fed. R. Civ. P.
Rule 8(a)(2) ....................7, 25
Rule 12(b)(1) ....................7
Rule 12(b)(6) ....................1, 6
Rule 23 ....................24

## **INTRODUCTION**

Defendant Teachers Insurance and Annuity Association of America's ("TIAA" or "Defendant")[1] Motion to Dismiss goes too far. Far from evaluating Plaintiffs' claims for legal sufficiency at this early juncture, TIAA seeks to prematurely adjudicate the merits of Plaintiffs' respective claims—including complex class certification and statute of limitations issues—all of which turn on factually-intensive inquiries that are wholly inappropriate on a motion to dismiss.

Indeed, in a clear attempt to transform this into a substantive motion, TIAA purports to introduce three different versions of its "Privacy Policy" under the guise of being inclusive of the documents referenced in Plaintiffs' Complaint. See Declaration of Laura Dishman ("Dishman Decl."), Exs. 1–3. But the policies proffered by TIAA are *not* those referenced in the Complaint, and for at least this reason should not be considered by the Court in addressing TIAA's motion here.[2]

Moreover, TIAA downplays, minimizes and, at times, utterly ignores Plaintiffs' allegations in favor of its own derived versions of them. In doing so, TIAA conveniently cherry

---

[1] The original defendants named in Plaintiffs' Complaint included the TIAA Board of Governors, Teachers Insurance and Annuity Association of America ("TIAA"), College Retirement Equities Fund, Teachers Advisors, LLC, TIAA-CREF Investment Management, LLC, TIAA-CREF Individual & Institutional Services, LLC, TIAA Trust, N.A., and TIAA Wealth Investment Management, LLC. On June 30, 2026, the parties filed a stipulation dismissing those entities, except TIAA, which the Court approved on July 1, 2026. See Stipulation of Dismissal, ECF No. 44; Marginal Order, ECF 45. Accordingly, TIAA's allegations regarding the other Defendants are moot (i.e., Sections II and III).

[2] The Declaration of Laura Dishman and its exhibits should also not be considered because TIAA submitted them in violation of the fundamental rule that consideration of a motion under Rule 12(b)(6) involve "only the complaint's allegations, documents attached to the complaint, and 'only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice.'" *Higgins v. McDonald*, No. CV RDB-25-1695, 2026 WL 111330, at *4 (D. Md. Jan. 15, 2026) (internal quotation marks omitted). Moreover, consideration of the Dishman Declaration privacy notices is likely to lead to confusion as to whether, and to what extent, they are the same or different than those expressly incorporated by reference into the Complaint, an issue conveniently overlooked by the Dishman Declaration.

picks and omits salient allegations to fit its false narrative. But Plaintiffs' respective allegations more than satisfy the pleading standard.

Specifically, the Complaint alleges how Plaintiffs and other customers use TIAA's Online Tools to communicate highly sensitive, confidential personal financial information directly to TIAA through TIAA's purported "secure" network—virtually the same as seeking advice from a personal financial advisor on a telephone call. And Plaintiffs communicate this sensitive confidential information—the privacy of which is of substantial value to Plaintiffs—to TIAA with the expectation that TIAA would hold it in confidence and not share it with unauthorized third parties—an expectation that TIAA explicitly fostered. But unbeknownst to Plaintiffs, that information *is* being disclosed to third parties like Google and LinkedIn. TIAA's motion nevertheless contends that this is not enough to establish legal viability. Not so.

Simply put, TIAA's motion should be denied and the matter allowed to proceed.

## I. <u>SUMMARY OF FACTUAL ALLEGATIONS</u>

As alleged in the Complaint, TIAA is a financial institution which offers financial services to its customers through the use and operation of proprietary "TIAA Systems," including its website (www.tiaa.org) ("Website"), mobile applications, and a variety of online financial tools ("Online Tools"), which are all used for communications between TIAA and its customers. Compl. ¶¶ 2, 32.

Plaintiffs have used these Online Tools, including "Am I On Track" and "Debt Illustrator," seeking advice and clarity on financial issues including retirement planning, saving, and investing, debt management, tax obligations, and budgeting. Compl. ¶ 2, 32, 92. In doing so, Plaintiffs communicate highly sensitive, confidential personal financial information[3] directly

[3] This includes both (1) personally identifiable information, i.e, information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal

to TIAA through TIAA's purported "secure" network for the purpose of obtaining personalized financial services in response. *Id.* ¶¶ 33, 92–94.

Plaintiffs' use of the Online Tools to seek financial advice is no different from seeking advice from a personal financial advisor in person. In both cases, customers communicate private, sensitive financial information to TIAA and, in return, receive confidential financial advice. Use of the TIAA Systems entails active, bilateral communication of information; this interaction is specifically designed to provide personalized financial guidance, Thus, a Plaintiff communicating her PII and PFI is not merely a general visitor, but rather a consumer of specialized financial services. *Id.* ¶ 94.

Plaintiffs' PFI—information that Plaintiffs intended to be made available *only* to TIAA and the privacy of which is of substantial value to Plaintiffs—is communicated to TIAA with the expectation that it will be held in confidence and not be shared with unauthorized third parties. *Id.* ¶¶ 5, 31, 93. This expectation is based, in part, on TIAA's explicit statements to customers that it does not disclose such confidential personal information to anyone outside of the TIAA Companies unless: TIAA has "received proper consent from you" or is "legally permitted to do so." *Id.* ¶ 5.

Plaintiffs allege that TIAA has nevertheless disclosed such confidential, personal financial information to at least two unauthorized third-party marketing organizations, Google and LinkedIn, without Plaintiffs' knowledge and consent in violation of the state laws where

---

or identifying information that is linked or linkable to a specific individual ("PII") and (2) private financial information, i.e., nonpublic personal information that is obtained by a financial institution about a consumer in connection with providing a financial product or service to that consumer, including an individual's income, investments, debts, bank account balance or other account information, personal credit or debit card information, bank, credit, or financial statements, and other information relating to an individual's personal finances ("PFI,"). Compl. ¶¶ 1–2.

Plaintiffs are located and participated in the communications. *Id.* ¶¶ 41–45.

TIAA makes these unauthorized disclosures by permitting the unauthorized third parties access both to its "secure" network, which it alone controls, and to the confidential communications between TIAA and its customers; enabling the interception of the content communicated, including Plaintiffs' specific financial information to them; and by enabling the redirection and transmission of the intercepted content to Google and LinkedIn for their unlimited use. *Id.* ¶¶ 42, 45–47, 88, 93, 95–96, 98.

TIAA makes these disclosures by and through separate arrangements between TIAA with these unauthorized entities to which Plaintiffs are not parties. *Id.* ¶ 41. Through such arrangements, the interception and redirection of confidential content is accomplished by the installation of the unauthorized third parties' analytics software ("Analytics Trackers") in the HTML code for the TIAA Website, including the Online Tools. *Id.* ¶ 46. These automated Analytics Trackers perform the functions of surreptitiously locating, acquiring, capturing, and then transmitting Plaintiffs' PII and PFI to the unauthorized third parties. *Id.* ¶¶ 41, 47. Once obtained, it is maintained, stored, and used by the unauthorized third parties for their own revenue-generating purposes, including marketing and targeted advertising. *Id.* ¶¶ 41, 49–50, 56–58, 88, 96, 135, 138, 151, 154–155, 169, 171, 174, 192–193, 195, 212, 215.

Customers download TIAA's Online Tools to his or her personal computer devices and enter private financial information for the sole purpose of communicating it to TIAA to obtain individually directed financial services. *Id.* ¶¶ 47, 93–94. After the information is entered, the Analytics Trackers intercept the communication, identify and capture items of confidential content, including monetary amounts, and send the intercepted content to the unauthorized third-party owner of the Analytics Tracker. *Id.* ¶¶ 47, 98. The Complaint provides specific examples

of Plaintiffs' and other customers' Confidential Financial Information TIAA has disclosed through these arrangements, including: debts (mortgages, credit cards, and loans); assets and their values; salary and earnings: savings and investments; retirement and pension funds. *Id.* ¶¶ 96, 98.

Importantly, the Complaint alleges that (1) TIAA has disclosed the Confidential Information of *each Plaintiff*, (2) each Plaintiff is a TIAA member with an online account, (3) each Plaintiff has used TIAA Systems to access retirement accounts and the Online Tools, using their personal devices, and (4) each Plaintiff has thereby communicated their PFI to TIAA on multiple occasions through these means. *Id.* ¶¶ 7–16. The Complaint provides two examples of these Online Tools—the "Debt Illustrator" and "Am I On Track?" tools—and demonstrates, with screen shots, how both tools *prompt and require* the entry of specific confidential information. *Id.* ¶¶ 34–37. Figures 11 and 12 in the Complaint illustrate that the communications systems using these tools include trackers that are specifically designed to capture Plaintiffs' PII and PFI, which are then sent to third parties Google and LinkedIn.[4]

The Complaint also alleges that the unauthorized third parties purposefully associate intercepted PFI with its respective Plaintiff-owner. *Id.* ¶¶ 50, 63. For example, the Complaint alleges that LinkedIn stores a logged-in user's identifying information in a cookie on the user's computer, and that the LinkedIn Insight Tag sends these cookies to LinkedIn with Plaintiffs'

[4] While Figures 11 and 12 are based on the analysis of Plaintiff Chiu's use, the Complaint alleges that "a technical data team" was employed to "analyze each Plaintiff's browser-based communication with TIAA," and that the analysis confirmed in each case that the Confidential Information intended for TIAA was intercepted and sent to Google and LinkedIn (Compl. ¶¶ 66 (Chiu), 68 (Askaryar), 70 (Southerland), 72 (Balagot), 74 (Rusow), 76 (Slater), 78 (Oberst), 80 (Parziale), 82 (Canning), 84 (Seeherman)) and that "Plaintiff Remi Chiu's experience with TIAA's disclosure of his Confidential information is substantially the same as for all Plaintiffs" (*Id.* ¶ 65).

intercepted PFI. *Id.* ¶ 63. The complaint further alleges that all but one of the Plaintiffs[5] use the same browser to access both the TIAA Website and their LinkedIn accounts. *Id.* ¶¶ 65, 67, 69, 71, 73, 75, 79, 81, 83. And LinkedIn is able to match the confidential information with Plaintiffs "even when third-party cookies are blocked." *Id.* ¶ 64.

Importantly, Plaintiffs allege that Google and LinkedIn use this data for their own purposes: "[o]nce obtained through this interception and routing process, on information and belief, it is maintained, stored and used by the Third Parties for their own revenue-generating purposes, including marketing and targeted advertising." *Id.* ¶ 41. What's more, both entities engage in "digital marketing and advertising, generating billions in annual advertising revenue." *Id.* ¶ 57. This targeted advertising would simply not be possible unless the intercepted PFI was identifiable to the owner. *Id.* ¶¶ 50, 89.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion assesses whether the complaint contains sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This plausibility standard requires only that the factual allegations "be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. That standard requires that the court accept all facts pled as true and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). To survive a motion to dismiss, a plaintiff need not establish that its right to relief is probable or that alternative explanations are less likely; rather, it must merely advance a claim "across the line

[5] While the Complaint does not specifically allege that Oberst uses the same browser to access his TIAA, Google and LinkedIn accounts, the Complaint includes this allegation for the other Massachusetts plaintiff. Compl. ¶ 79.

from conceivable to plausible." *Twombly,* 550 U.S. at 570. If its explanation is plausible, the complaint survives. *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).

This same framework applies to motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 193 (4th Cir. 2026) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) ("When . . . a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'").

In the Fourth Circuit, the "requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset." *Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012). Thus, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and "plaintiffs are not required 'to prove [their] case in the complaint.'" Fed. R. Civ. P. 8(a)(2); *Lowy*, 167 F.4th at 193 (quoting *Robertson,* 679 F.3d at 291).

## III. ARGUMENT

### A. Plaintiffs Have Established Article III Standing

Confoundingly, TIAA ostensibly challenges Plaintiffs' Article III standing—despite the fact that this Court recently confirmed standing in a similar case involving the disclosure of confidential information, *Doe v. Shady Grove Reproductive Science Center, P.C.*, No. 24-cv-2368-ABA, 2025 WL 2781542 (D. Md. Sept. 30, 2025) ("*Shady Grove*"). While that case involved the disclosure of personal health information, the Court noted its decision would also apply to the personal financial information involved here. *Id.* at *3.

Article III standing requires (1) "injury in fact"; (2) that was "likely caused by the

defendant"; and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Regarding (1) "injury in fact," "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo*, 578 U.S. at 340–41). Such traditionally actionable harms include certain "intangible harms" "that have been 'traditionally recognized as providing a basis for lawsuits in American courts,' [such as] 'reputational harms, disclosure of private information, and intrusion upon seclusion.'" *Shady Grove*, 2025 WL 2781542 at *2 (quoting *TransUnion*, 594 U.S. at 417, 425); see also *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("[A] legally cognizable privacy injury" establishes Article III standing.).

In *Shady Grove*, this Court held that allegations of Shady Grove Reproductive Center's disclosure of plaintiffs' personally identifiable heath information to third parties like Google, though the same Google Analytics Trackers as those alleged here, were sufficient to confer standing. Reiterating the Supreme Court's decision in *Davis v. Federal Election Commission*, 554 U.S. 724 (2008), this Court recognized that precedent on this issue is not limited to personally identifiable *health* information and ultimately held that disclosure of "personal financial information constitutes a cognizable injury in fact." *Shady Grove*, 2025 WL 2781542 at *3 (citing *Davis*, 554 U.S. at 733). Like the plaintiffs in *Shady Grove*, Plaintiffs here "have alleged that they expected that their communications" relating to financial advice and including personal financial information "would remain private" (Compl. ¶¶ 5, 31, 39, 93), and TIAA

disclosed these private communications to the unauthorized third parties (*Id.* ¶¶ 41, 45, 65–84). *Shady Grove*, 2025 WL 2781542 at *3.

TIAA's half-hearted attempt to offensively distinguish *Shady Grove* only highlights how similar these cases are. TIAA argues that *Shady Grove* "is materially different" because it involved the "disclosure of inherently sensitive medical-treatment information linked to identifiable individuals," while the allegations in the Complaint in this case "allege website analytics associated with online financial tools" and Plaintiffs "do[] not allege that any financial inputs were transmitted with [their] name[s], account number[s], Social Security number[s], bank information, or other information capable of identifying [them] to Google or LinkedIn." Mem. 10–11. Yet TIAA's argument flies in the face of Plaintiffs' detailed allegations that the disclosed information is personally identifiable.

For example, Plaintiffs specifically allege how Google and LinkedIn use the information for their own targeted advertising, which necessarily requires that the information be linked to one's identity. Compl. ¶¶ 48–64, 88–90. The Complaint also describes how LinkedIn stores identifying information in a cookie that is sent to LinkedIn with the intercepted information to allow LinkedIn to associate the information with an identity. *Id.* ¶¶ 63–64. The Complaint also alleges that Plaintiffs each accessed the Online Tools and their Google and LinkedIn accounts using the same browser, which means that the "identifying" cookies available on that browser are sent by the Analytics Trackers to link the confidential information to its owner. *Id.* ¶¶ 65, 67, 69, 71, 73, 75, 79, 81, 83.

Moreover, the cases cited by TIAA are easily distinguishable (or even support Plaintiffs' arguments), and therefore do not change the result compelled by this Court's decision in *Shady Grove*. TIAA fails to cite a single case where a court found a lack of standing where, as here,

Plaintiffs alleged the disclosure of identifiable private financial information to a third party for the financial benefit of that third party. And none of the authorities TIAA cites found a lack of Article III standing based on an alleged disclosure of the type of sensitive and private financial information alleged here. *See Id.* ¶¶ 66, 96, 98 (specifying types of confidential information disclosed by TIAA including Debt Type (e.g., credit card), Debt Name (e.g., AMEX), Amount Owed, Interest rate, current monthly payment on debt, and annual salary).

In several of these cases the court found a lack of standing because, unlike here (*supra*, 6–7) the complaint did not allege that specific private or sensitive information was disclosed. In *Hernandez,* the plaintiff alleged that "a variety of highly sensitive information ***can be*** captured in event responses from website visitors, including medical conditions, credit card details, and other personal information displayed or entered on webpages." *Hernandez v. Noom, Inc.*, No. 1:23-cv-00641-JRR, 2023 WL 8934019, at *8 (D. Md. Dec. 27, 2023) (emphasis added). In *Arndt*, there was no allegation that private or sensitive information was collected; the complaint only alleged that mouse clicks/movements and masked keystrokes were sent. *Arndt v. Gov't. Emps. Ins. Co.*, 750 F. Supp. 3d 518 (D. Md, 2024). And in *Popa v. Microsoft Corporation*, personal information was omitted before being sent to the provider, and in any event, the complaint alleged only disclosure of plaintiff's "pet-store preferences and her street name." *Popa v. Microsoft Corporation*, 153 F.4th 784, 791 (9th Cir. 2025). In *Herzman*, the complaint only alleged "that on or about October 2024, he made an appointment using Defendant's website for 'dental services,'" but did not identify what information was disclosed when he made the appointment. *Herzman v.Smile Brands Inc.*, No. 25-cv-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026). And finally in *Myers*, the court held that information related to Plaintiffs browsing the Dicks Sporting Goods website was not sensitive or private and, therefore, did not

confer standing. *Myers v. Dick's Sporting Goods, Inc.*, No. 2:25-cv-03241-DJC-CKD, 2026 WL 1045528, at *3 (E.D. Cal. Apr. 16, 2026).

Further, *Hernandez*, *Arndt*, *Popa* and *BPS Direct* (*see* Mem. at 10) all involve the use of "session replay," which is very different function from the Google and LinkedIn Analytics Trackers that the Complaint alleges are used to intercept Plaintiffs' PFI. The Analytics Trackers involved in this case intercept confidential content and then redirect that information to third parties Google and LinkedIn to use for their own business purposes. In contrast websites owners use session replay for an entirely different purpose, that is, solely to collect information for their own purposes in managing their websites. Thus, the session replay provider is acting as an agent of the website owner and does not confiscate and use the data it captures for its own separate business purposes.

Ironically, some of the cases relied on by TIAA actually substantiate that the type of disclosure Plaintiffs allege here confers standing. In *Popa*, the court noted that the disclosure of sensitive financial information would confer standing: "To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., ***involving sensitive*** medical or ***financial information***)." *Popa*, 153 F.4th at 791 (emphasis added). And in *BPS Direct*, the Court noted that one would have privacy interests in "the contents of [a] wallet or bank account," which is the exact type of information disclosed to third parties in this case. *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litigation,* 175 F.4th 423, 433 (3rd Cir. 2026). TIAA also relies on *Straubmuller*, but that decision specifically noted that "[c]oncrete harms with a close relationship to harms traditionally recognized as bases for lawsuit" that permit a plaintiff to bring suit "even if the injury alone does not satisfy Article III standing requirements" include "disclosure of private information," like that in this case. *Straubmuller v. JetBlue Airways*

*Corp.*, No. 23-cv-384-DKC, 2023 WL 5671615, at *2 (D. Md. Sept. 1, 2023).

In sum, Plaintiffs' allegations are more than sufficient to confer Article III standing.

### B. The Complaint Sufficiently Pleads the "Contents" of All Disclosed Communications

TIAA argues that the Complaint alleges, with respect to all Plaintiffs, only the interception and disclosure of "unspecified 'Confidential Information,'" without identifying the particular contents disclosed. Mem. 13, 15-16. But TIAA's backwards logic would require this Court to ignore the virtual litany of allegations in Plaintiffs' Complaint expressly identifying the information that Plaintiffs contend TIAA disclosed.

Specifically, the Complaint alleges that each plaintiff used one or both of the "Debt Illustrator" and "Am I On Track?" tools. Compl. ¶¶ 36, 37, 65, 66, 67, 77, 79, 92, 95. The Complaint shows (via screen shots) that both tools *require* entering certain confidential information, namely salary and current retirement savings (for Am I on Track?) and Debt Type (e.g., credit card), Debt Name (e.g., AMEX), Amount Owed, Interest Rate and Current Monthly Payment (for Debt Illustrator). *See* Compl. ¶¶ 34–37. Figures 11 and 12 in the Complaint show that use of these tools necessarily results in this specific entered confidential information being sent to third parties Google and LinkedIn.

Plaintiffs have therefore clearly identified the specific "contents" of the alleged disclosed communications.

### C. The Complaint Sufficiently, and Clearly, Pleads That TIAA Performed the Requisite Acts

TIAA argues that the Complaint alleges, with respect to all Plaintiffs, that the Analytics Trackers, and not TIAA, perform the alleged operative acts. Mem. 13, 15 and 16. TIAA's argument again requires overlooking the abundance of allegations in the Complaint expressly identifying the disclosure actions undertaken by TIAA.

Indeed, Plaintiffs explicitly allege not merely the fact of—but also the mechanisms used in—TIAA's "disclosure": TIAA permitting access by unauthorized third-parties to its purported secure communications systems between TIAA, as a financial institution and fiduciary on the one hand, and Plaintiffs on the other; and TIAA permitting use by those third-parties of Analytics Trackers to intercept and confiscate Plaintiffs' PFI of those communications. Compl. ¶¶ 41, 45–51, 56–58, 95–98.

Moreover, Plaintiffs allege that TIAA "intentionally disclosed, and continues to disclose, Plaintiffs' Confidential Information by allowing the routine and continuous interception of Confidential Information by at least two unauthorized third parties, Google and LinkedIn, without the Plaintiffs' prior consent as required by state law." *Id*. ¶ 45. And Plaintiffs allege that TIAA "disclosed Plaintiffs' Confidential Information by providing LinkedIn access to its proprietary systems and permitting the installation of the LinkedIn Insight Tag, an Analytics Trackers by which LinkedIn intercepts Plaintiffs communications and information and routes the captured information directly to LinkedIn for its own unrestricted use via the LinkedIn Insight Tag." *Id.* ¶ 56.

For these reasons, Plaintiffs have plainly and sufficiently pled TIAA's disclosure.

**D. <u>Plaintiffs Sufficiently Plead Their Massachusetts-Specific Claims</u>**

For the reasons described above , Plaintiffs have sufficiently pled the "contents" of the alleged communications and the requisite "disclosure" by TIAA. *Supra* at sections B and C.

TIAA also argues Plaintiffs' Massachusetts claims are foreclosed by *Vita v. New England Baptist Hospital,* 243 N.E.3d 1185 (2024) ("*Vita*"). Mem., 12–14. But a proper reading of *Vita's* reasoning—coupled with TIAA's repeated misstatements of Plaintiffs' allegations—makes clear that *Vita* is inapplicable to this case.

The *Vita* court focused on what constitutes a "communication" under the Massachusetts

Wiretapping Statute ("MWS") and determined that the casual browsing activities in which plaintiff Vita engaged—and which did *not* allege the provision or disclosure of *any* of Vita's private or confidential information—did not satisfy the "communication" requirement of the MWS. In particular, the *Vita* court held that merely "[b]rowsing and accessing the information published on a website is significantly different from having a conversation or sending a message to another person." *Vita*, 243 N.E.3d at 1199.

There, Vita "accessed and reviewed information available to the public on the hospitals' websites regarding doctors (including their credentials and backgrounds) and medical symptoms, conditions, and procedures." *Id.* at 1188. Her alleged communication consisted of "entering a URL, accessing a specific webpage, clicking on links, and scrolling through a webpage," and the SJC found those acts to be "clearly not the type of person-to-person conversation or messaging unambiguously protected by the act." *Id.* at 1205. Vita did "not allege that private patient records or messages to nurses, doctors, or other healthcare providers were intercepted." *Id.* at 1188.

TIAA argues the Massachusetts Plaintiffs here "plead the same theory rejected in *Vita*," Mem. at 13, but that characterization is wholly inaccurate. The allegations here stand in stark contrast to those of *Vita* and satisfy all of the requirements that *Vita* found lacking.[6]

First, unlike Vita—who had merely casually browsed two hospitals' websites—Plaintiffs here allege that they engaged with TIAA in bilateral electronic communications involving (1) the

---

[6] TIAA's reliance on the Northern District of Georgia's application of *Vita* in *In re Consumer Vehicle Driving Data Tracking Collection* is also misplaced. There, plaintiffs conceded the electronic signals sent by their vehicles (not them personally) to the auto manufacturer, GM, through the OnStar system installed in the car that indicated "hard braking," failure to wear a seatbelt, speeding, and "late night driving" from users' vehicles, to GM, were "communications without a second party and not person-to-person." No. 1:24-MD-3115-TWT, 2026 WL 1092882, at *2, *18 (N.D. Ga. Apr. 22, 2026).

provision by Plaintiffs to TIAA of their PII and PFI, and (2) the communication, by TIAA back to Plaintiffs, of specific, personal, and actionable financial advice tantamount to an in person or telephonic meeting. Compl. ¶¶ 92–94. Plaintiffs specifically allege that they downloaded the Online Tools to their personal devices, entered personal confidential financial information requested by TIAA, and communicated that content directly to TIAA. In turn, Plaintiffs received a specific *personalized* communication with financial advice from TIAA. These allegations plainly establish the necessary communications for a violation of MWS. *Id.* ¶¶ 182–197.

Second, the *Vita* court noted that the plaintiff did not allege that "medical records or the contents of [her husband's] patient portal were in any way collected, intercepted, and transferred to third parties." *Vita* at 1190. To the contrary, Plaintiffs here plead the very opposite: they allege the communication, interception, and confiscation of their specific, private PFI—which is defined in the Complaint to include personally identifiable information together with income, savings, investments and other assets, mortgages and loans, bank account and pension account balance, insurances and annuities, credit card and other debts, and other information relating to an his personal finances—to third parties. Compl. ¶ 1; *see, e.g., Pine v. Rust*, 535 N.E.2d 1247, 1248 (1989) (actionable conduct under MWS where real estate trustee enlisted his wife, who used a false name and posed as a tenant, to attend and record a tenant's-only union meeting with their counsel, and provided the privileged recordings to Rust, an unauthorized third-party).

For example, Plaintiff Oberst entered Confidential Information for communication to TIAA using TIAA's "Am I On Track" tool. Compl. ¶ 77. And Plaintiff Parziale "entered his Confidential Information into the "Am I On Track" tool on the Website about fifteen times," and "the Google Analytics tags and the LinkedIn Insight Tags that TIAA installed on its website intercepted his Confidential Information and sent it to Google and LinkedIn, respectively." *Id.* ¶

79. This Confidential Information, intended for communication to TIAA only, was disclosed to Google and LinkedIn—the "Unauthorized Third Parties"—because TIAA provided each of them access to the confidential communications, thereby permitting them to intercept and confiscate the content using Analytics Trackers. *See, e.g.*, *id.* ¶ 80. Google and LinkedIn, of course, are "marketing entities [. . .] that collect and maintain substantial amounts of individuals' personal information for their own profit-making purposes." *Id.* ¶ 6. Therefore, Plaintiffs' MWS allegations are concrete, detailed, and thus sufficiently pled.

### E. <u>Plaintiffs Sufficiently Plead Their California-Specific Claim</u>

For the reasons described above (*supra* at section B and C), Plaintiffs have sufficiently pled the "contents" of the alleged communications and the requisite "disclosure" by TIAA.

Even so, TIAA makes a senseless argument that the California statute does not apply because Google and LinkedIn are not "parties to the communication." Neither Google nor LinkedIn are intended recipients of the communication of Plaintiffs' sensitive financial information elicited by TIAA and transmitted between the Plaintiffs and TIAA for the sole and express purpose of TIAA providing financial services to Plaintiffs. Compl. ¶¶ 32, 33, 92. And TIAA acknowledges and confirms this fact by stating, specifically and affirmatively in its published policy announcements, that it will not make such private information available to any other persons or entities without Plaintiffs' prior consent. Compl. ¶ 5.

Importantly, both Google and LinkedIn recognize that they are not parties to these confidential communications. In fact, both of them have warned TIAA, in the documentation associated with their access arrangements, not to allow either of them access to sensitive personal information without the Plaintiffs' express prior consent. Compl. ¶¶ 52, 53, 59, 60. LinkedIn, for example, specifically identifies the "sensitive financial data" of TIAA's customers using the Online Tools as information that should not be made available to it. Compl. ¶ 61.

Moreover, neither Google nor LinkedIn receive "direct transmissions" from plaintiffs. Instead, TIAA provides the access and opportunity for Google and Linked to intercept and confiscate—using their proprietary Analytics Trackers—to capture PFI intended by Plaintiffs to be exclusively communicated to TIAA and no one else. Compl. ¶¶ 5, 41, 46, 47, 49, 56. The unconsented access to and confiscation by Google and LinkedIn, using Analytics Trackers, of confidential communications and content not intended for them is the very definition of "eavesdropping." *See India Price v. Carnival Corp.*, 712 F. Supp. 3d, 1355 (S.D. Cal. 2024).

TIAA cites neither any California state nor Ninth Circuit law to support its position, and instead only cites two inapplicable Third Circuit cases. The first, *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), dealt with disclosure of normal website browsing activity, not the disclosure of sensitive personal financial data, 827 F.3d at 269, and predates much of the modern wave of website-tracking litigation under CIPA. And glaringly, it does not even rest upon the principle espoused by TIAA. Rather, it was decided on the principle that the plaintiffs' pleading did not satisfy the *Iqbal* federal pleading standard because the shallow allegations of Google's involvement were "entirely conclusory." That is not the case here.

The other case put forth by TIAA, *Cole v. Quest Diagnostics Inc.*, is a non-precedential Third Circuit opinion wholly at odds with Ninth Circuit law, such as *In re Facebook, Inc. Internet Tracking Litigation*, below, and factually distinct. *Cole v. Quest Diagnostics Inc.*, No. 2:23-cv-20647, 2025 WL 88703 (D.N.J. Jan. 14, 2025). In *Cole*, the allegation was that the consumer's device simultaneously sent a communication to Quest and Facebook and that the information sent did not include any protected substantive medical information (such as the results of medical tests) but only the URL of the Quest website that the patient accessed. *Id.* *Cole* relied upon *Google Cookie,* also factually distinct in alleging that "user's browsers directly

communicate with [online advertising businesses] about the webpages they are visiting." *Id.* at *3.

TIAA relies exclusively on Third Circuit authority and omit any reference to applicable Ninth Circuit law. But Supreme Court precedent makes clear that a federal circuit court's interpretation of a state's law carries greater persuasive weight when that state falls within the circuit's jurisdiction. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 45–46 (2017). "This deference is warranted … because lower federal courts 'are better schooled in and more able to interpret the laws of their respective States.'" *Id.* at 45 (citing *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 500, 105 S. Ct. 2794, 2800, 86 L. Ed. 2d 394 (1985)). Thus, the Third Circuit's interpretation of California's CIPA—and its narrow view of who qualifies as a "direct party" to a communication—is an outlier. Accordingly, the Ninth Circuit—consistent with other Circuits—has rejected the Third Circuit cases upon which TIAA relies.

For example, in *In re Facebook, Inc. Internet Tracking Litigation*, after considering *Nickelodeon*, the Ninth Circuit expressly adopted the approach of the First and Seventh Circuits and held that Facebook was "not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication" at issue, concluding that plaintiffs had plausibly stated claims under the Federal Wiretap Act and CIPA. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020).

Likewise, in *Garcia v. Truist Financial Corp.*, the Central District of California denied a motion to dismiss a CIPA claim alleging that an online bank disclosed a customer's personally identifiable confidential information to LinkedIn through the LinkedIn Insight Tag—a fact pattern closely resembling the allegations here. *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149, 1161 (C.D. Cal. 2026). Noting Truist's reliance on the "party to the communication"

rationale from *Cole*, the *Garcia* court held that the alleged disclosure of user information through a concealed, embedded LinkedIn Insight Tag stated a viable CIPA claim. *Id.* at 1169–1170.

The Ninth Circuit precedent on this issue is clear: a CIPA claim will survive a motion to dismiss by alleging the real time capture of the contents of a plaintiff's personal information and communications on a defendant's website without the consent of the plaintiff. "One who 'engage[s] in the unauthorized duplication and forwarding of unknowing users' information' is ***not a party to the communication***." *Karwowski v. Gen Digital, Inc.*, No. 24-7213, 2025 WL 3002610, at *1 (9th Cir. Oct. 27, 2025) (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608); *see also Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 WL 1718225 (9th Cir. June 20, 2025) (reversing a lower district court dismissal that aligned with the Third Circuit's theory). That is exactly what is alleged here.

### F. <u>Plaintiffs Sufficiently Plead "Disclosure" of "Contents" of Communication Between TIAA and the Maryland, Pennsylvania, and Florida Plaintiffs</u>

For the reasons described above (*supra* at section C and D), Plaintiffs have sufficiently pled the "contents" of the alleged communications and the requisite "disclosure" by TIAA.

In addition, save for a conclusory and fleeting reference, TIAA's Motion almost entirely ignores this Court's ruling in *Doe v. Shady Grove Reproductive Science Center*, *P.C.*, No. 24-CV-2368-ABA, 2025 WL 2781542 (D. Md. Sept. 30, 2025). Mem. at 10. In *Shady Grove*, where plaintiffs faced a motion to dismiss very similar allegations as those here, i.e. a healthcare provider installed third party website analytics (including, as here, Google Analytics) on its website, this Court found plaintiffs "sufficiently allege the disclosure of 'information concerning...the existence, substance, purport, or meaning of that communication' to the Analytics Companies" where they communicated information through the webpage's "Schedule Appointment" and "Contact SGF" webpages. *Id.* at *9.

In *Shady Grove*, the disclosed contents were "similar to some of the information that one would communicate to a physician directly during a face-to-face appointment," (*id.*); here, the contents disclosed by TIAA to Google and LinkedIn are tantamount to the information that one would communicate to a financial advisor during a face-to-face appointment. Compl. ¶ 93. There, the contents included website users' desire to seek fertility treatment; here, contents include specific information about Plaintiffs' retirement objectives, financial habits, amount and types of debt, assets, annual salary, and more. *Id.* ¶ 96. As this Court determined in *Shady Grove*, here, too, Plaintiffs' allegations that TIAA disclosed the contents of confidential communications to unauthorized third parties, without Plaintiffs' knowledge or consent, are sufficient to state a claim for a violation of the Maryland Wiretapping and Electronic Surveillance Act ("MWESCA"). *Id.* ¶¶ 95, 97, 110, 126–140.

And because courts treat the Maryland, Pennsylvania, Massachusetts, and Florida wiretap statues as "largely analogous" laws all based on the Federal Wiretap Act, this Court's analysis in *Shady Grove* also requires rejection of each of TIAA's proffered arguments regarding content and disclosure for all four states. *See India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1355 n. 4 (S.D. Cal. 2024) (collecting cases and applying the same analysis to Maryland, Massachusetts, and Pennsylvania wiretap laws as to the Federal Wiretap Act, upon which they are all based).

In addition, TIAA's Motion references "claims [that] rest on routine digital identifiers and browsing-related data" that it brushes off as "mechanics of a transmission." Mem. at 15. But that does not accurately describe the claims pled in the Complaint. First, as detailed above, the Complaint alleges, with detail, TIAA's disclosure of specific Confidential Information well beyond mere "mechanics of transmission." The Complaint alleges TIAA disclosed to

unauthorized third parties debt information, salary and earnings information, personal savings and investments, expected Social Security income, individual financial habits, and searches conducted on TIAA's site. Compl. ¶¶ 86, 96, 98. Plaintiffs allege TIAA disclosed actual dollar amounts owed, interest rates on debts, monthly payment amounts, annual salary, planned retirement age, whether and to what extent the user's employer matches their retirement contributions, and projected retirement income. Compl. Figures 4–8, 11–12. Under any of the above definitions, the information Plaintiffs allege TIAA discloses to Google and LinkedIn clearly and unambiguously qualifies as "contents."

The information TIAA attempts to categorize as "non-content" and "mechanics of transmission," like "IP addresses," "device identifiers," and "cookie identifiers" is also not as innocuous as TIAA suggests. Mem. at 15. These identifiers are defined in the Complaint as "information that can be used to distinguish or trace an individual's identity" (Compl. at 1) and are categories of information this Court recently held to be personally identifiable information. *Shady Grove,* 2025 WL 2781542, at *9 (personally identifiable information could include "user and device identifiers such as GUID, Client ID, c_user cookie, and IP Addresses"). What TIAA categorizes as "non-content" is the very type of information this Court found to be "information that the Analytics Companies could match up with other data from which to determine or confirm what *person*—as opposed to an anonymous user—was seeking" services from Shady Grove. *Id.*

Because this Court has already found those "mechanics of transmission" to be PII, and because Plaintiffs have alleged the detailed and specific confidential content of their communication with TIAA was disclosed, Plaintiffs have sufficiently alleged that the disclosed information was "contents" within the meaning of the MWESA, FSCA, and WESCA.

### G. <u>Statute of Limitations and Tolling Determinations are Premature</u>

TIAA further avers that Plaintiffs' claims are at least partially time-barred. But glaringly, TIAA's position turns on the Privacy Notice submitted with the Dishman Declaration which, as discussed herein, may not be considered and would not be determinative in any event.

Although the statute of limitations is defined by state law, the question of when a cause of action accrues is one of federal law. *Howell v. Cnty. Comm. of Hampshire County*, No. 21-1023, 2022 WL 61428 (4th Cir. Jan. 6, 2022). Accordingly, a plaintiff's claim accrues when she has or should have "possession of the critical facts that [s]he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). Only when the plaintiff becomes aware of these two facts, is he on inquiry notice and has a duty to "inquire about reasonably discoverable details." *Slaey v. Adams*, No. 1:08cv354, 2008 WL 5377937 (E.D. Va. Dec. 23, 2008).

Whether a user had actual knowledge of a privacy policy or was otherwise on inquiry notice are questions of fact. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."); *see also Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1000 (N.D. Cal. 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA."); *Kauffman v. Papa John's Int'l, Inc.*, No. 22-CV-1492-L-MSB, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024) ("[T]he factual disputes regarding whether Plaintiff actually saw the Privacy Policy and consented to it are not suitable for resolution at this stage in the proceedings."); *Smith v. Google, LLC*, 735 F. Supp. 3d

1188, 1196 (N.D. Cal. 2024) ("The mere existence of various terms of service and privacy policies cannot establish at this stage, where the Court must draw all reasonable inferences in plaintiffs' favor, that any of the plaintiffs *did* in fact consent."); *Turner v. Nuance Comm'ns, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) ("Even if the court could take judicial notice of the DAA, there is a factual dispute over whether the DAA sufficiently notified Plaintiffs of Nuance's conduct.").

Nor is a generalized notice, contrary to TIAA's suggestion, sufficient to establish consent. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("Meta's policies do not, however, specifically indicate that Meta may acquire *health data* obtained from Facebook users' interactions with their *medical providers' websites.* Its generalized notice is not sufficient to establish consent."); *see also Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081 (C.D. Cal. 2023); *see Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) (finding that plaintiffs pleading that stated she did not consent to recording was sufficiently pled to overcome a 12(b)(6) motion).

TIAA also attacks Plaintiffs' tolling allegations as "legally insufficient." Mem. 19-20. Yet TIAA cites only one case in support of its argument—*Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891 (N.D. Cal. 2023)—claiming it stands for the overbroad rule that "[c]onduct disclosed in a publicly available privacy notice is not concealed." But the *Javier* court made no such finding. Rather, there, plaintiff's admissions made clear that he had knowledge of the conduct at issue, and, based upon that admitted knowledge, the delayed discovery rule did not apply to toll the limitations period for his CIPA claim. *Id.* at 902.

In factual contrast, Plaintiffs have specifically alleged that (1) TIAA's Analytics Trackers are purposefully designed and integrated in a way that makes them impossible to identify with

the naked eye and their presence can only be discovered through means significantly more sophisticated than that possessed by the average internet user, and (2) TIAA incorporated the tracking tools, permitting the capture and confiscation of private information by the Third Parties, into its Website while, at the same time, *affirmatively concealing those facts from Plaintiffs by telling* all Website users through its Privacy Policy that it would *not* so disclose user's private information. Compl. ¶ 222. TIAA ignores these salient allegations. Accordingly, Plaintiffs' tolling allegations are sufficient.

**H. <u>The Complaint's Class Allegations Are Sufficient At This Juncture</u>**

TIAA also attacks the Complaints class allegations—despite openly conceding that "class certification is ordinarily addressed later." Mem. at 20. Again, TIAA's premature attack should be rejected.

Specifically, TIAA requests that Plaintiffs' class definition be stricken as a "fail-safe" class. *See* Mem. at 20. Not so. The allegations are that personal financial information was illegally disclosed. Compl. ¶¶ 66, 68, 70, 72, 74, 76, 78, 80, 82, 84–87, Figures 11–12. Therefore, once the class is defined, Plaintiffs will need to prove TIAA has liability to the class (or the respective subclasses). *See Woodward v. GEICO Advantage Ins. Co.,* No. CV GTR-21-21-952, 2022 WL 2953053, at *12 (D. Md. July 25, 2022) (rejecting request to strike class as fail-safe).

As TIAA tacitly concedes, the Court should defer any class certification issues until after this motion is resolved. However, should the Court be inclined to determine these issues, Plaintiffs request more fulsome class certification briefing. *See, e.g., Cummins v. Ascellon Corp.*, No. DKC-19-2953, 2020 WL 6544822, at *7 (D.Md. Nov. 6, 2020) ("Several courts have found that a 'fail-safe class definition' is not necessarily fatal in the Fed. R. Civ. P. 23 context.").

## I. <u>Territorial and Choice of Law Defects Claimed by TIAA are Red Herrings</u>

Citing no case law, TIAA asserts that "Plaintiffs must plead facts showing that each statute reached the alleged communication at issue" and that "residence alone does not establish that each alleged communication occurred within the territorial scope of the statute invoked." Mem. at 21. But these choice of law and territorial issues are factual red herrings wholly inappropriate at the pleading stage.

Nevertheless, the Complaint alleges each Plaintiff's location when they accessed the TIAA Website, downloaded and used the Online Tool, and entered their confidential financial information for communication to TIAA. The Complaint alleges that each Plaintiff lives and/or works in the respective state identified, and that each Plaintiff "used and continues to use TIAA Systems to access [his/her] retirement accounts and Online Tools using computing devices at [his/her] residence" and/or "place of employment" in the state, and that each Plaintiff "has communicated Confidential Information to TIAA on multiple occasions through these means." Compl. ¶¶ 7-16.

For example, the Complaint alleges that Plaintiff Chiu "resides in Baltimore," uses the retirement tools "two or three times per year for over twelve years," "has been a TIAA customer since 2013." Compl. ¶ 65–66. For each Plaintiff, the Complaint contains similar sufficient allegations. *Id.* ¶¶ 67–68 (Askaryar, MD); 69–70 (Southerland, MD); 71–72 (Balagot, CA); 73–74 (Rusow, CA); 75–76 (Slater, FL); 77-78 (Oberst, MA); 79-80 (Parziale, MA); 81–82 (Canning, PA); 83–84 (Seeherman, PA). Plaintiffs further allege that the interceptions take place at their personal devices' browsers at their in-state physical locations where they engaged in confidential communications with TIAA. *Id.* ¶¶ 47, 63. Rule 8's "short and plain statement of the claim showing that the pleader is entitled to relief" does not require any further level of specificity at this time. Fed. R. Civ. P. 8(a)(2).

Finally, while TIAA vaguely refers to its purported desire to preserve "any choice-of-law issues raised by Plaintiffs' multi-state theory" (Mem. at 21) it does not identify any choice of law issue or otherwise apprise this Court (or Plaintiffs) what they hope to preserve. In any event, such an inquiry is premature. *See, e.g., Doe v. Microsoft Corp*., No. C23-0718-JCC, 2023 WL 8780879, at *9 n.13 (W.D. Wash. Dec. 19, 2023) (declining to address extraterritoriality claims at the motion to dismiss stage "B[b]cause this request is premature"); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) ("[A] detailed choice-of-law analysis is not appropriate… Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *19 (N.D. Cal. Sept. 26, 2013) (collecting cases).

## IV. <u>CONCLUSION</u>

In light of the foregoing, Plaintiffs respectfully request that the Court deny TIAA's motion in its entirety.

DATED: July 10, 2026

/s/ *Robert F. Ruyak*
Robert F. Ruyak (admission pending)
Stephen G. Larson (*Pro Hac Vice*)
Dana M. Howard (*Pro Hac Vice*)
S. Gregory Herrman (*Pro Hac Vice*)
Karen E. Huber, (admission forthcoming)
LARSON LLP
900 17th Street NW, Suite 200
Washington, D.C. 20006
Telephone: (202) 795-4900
Facsimile: (202) 795-4888

/s/ *Douglas M. Bregman*
Douglas M. Bregman (No. 02131)
John R. Grimm (No. 19223)
Bregman, Berbert, Schwartz & Gilday, LLC
7315 Wisconsin Ave.
Suite 800 West
Bethesda, MD 20814
301-656-2707
301-961-6525 (Fax)
dbregman@bregmanlaw.com
jgrimm@bregmanlaw.com

Attorneys for Plaintiffs and the Class

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2026, a true and correct copy of the foregoing was served via the Court's CM/ECF system on all counsel of record in this case.

/s/ *Douglas M. Bregman*
Douglas M. Bregman